**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF NORTH CAROLINA**
**WESTERN DIVISION**
**Civil File No.: 4:23-cv-77**

| | | |
|---|---|---|
| **FORMA AI INC.,** | ) | |
| **Plaintiff,** | ) | |
| | ) | **DEFENDANT TWIC, INC'S LOCAL CIVIL** |
| **v.** | ) | **RULE 56.1 STATEMENT OF MATERIAL** |
| | ) | **FACTS** |
| **TWIC, INC.,** | ) | |
| **Defendants.** | ) | |

Pursuant to Local Civil Rule 56.1(a), Defendant Twic, Inc. provides the following

statement of material facts as to which it contends there is no genuine issue of dispute.[1]

**Defendant's employee benefits products and services**

1.      Defendant provides software for the management and customization of employee

benefits to companies across the country.  [Fan Decl., ¶¶ 4-8; Keninger Decl., ¶ 7.]

2.      Employee benefits are programs offered by companies to their employees to

improve employee retention, engagement, and productivity.  Examples of employee benefits

offerings include health and wellness benefits (such as health insurance, prescription drug

coverage, and employee assistance and wellness programs); retirement benefits (such as 401(k)

or pension plans and financial planning services); time-off benefits (such as vacation leave, sick

leave, and family leave); and work-life balance benefits (such as hybrid and flexible working

---

[1] Defendant provides the following abbreviations to facilitate review of the evidence in this case.
- "Fan Decl." refers the Declaration of Jason Fan.
- "Keninger Decl." refers to the Declaration of Samuel Keninger.
- "Collins Decl." refers to the Declaration of Catherine Collins.
- "Tan Decl." refers to the Declaration of Jinglin "Lynn" Tan.
- "Lucas Decl." refers to the Declaration of Andrew Lucas.
- "Alazzam Depo." refers to the 30(b)(6) Deposition of Forma AI Inc. by and through its representative Nabeil Alazzam.
- "Buchanan Depo." refers to the 30(b)(6) Deposition of Forma AI Inc. by and through its representative Michael Buchanan.
- "Rogers Depo." refers to the Deposition of Graham Rogers.

schedules and childcare support). [Fan Decl., ¶ 4.]

3. Defendant's software allows companies to customize their employee benefits plans, including through the offering of Lifestyle Spending Accounts (LSAs), Health Reimbursement Accounts (HRAs), and pre-tax accounts, such as Health Savings Accounts (HSAs) and Flexible Spending Accounts (FSAs). LSAs are accounts funded by employers that an employee may spend to support their lifestyle. HRAs are accounts funded by an employer that an employee may use to pay for medical expenses that are not covered by the company's traditional health insurance plan. HSAs and FSAs are special savings accounts that allow an employee to redirect money from their paycheck pre-tax to the account to be used for certain medical expenses. [Fan Decl., ¶¶ 4-8; Keninger Decl., ¶ 7.]

4. Defendant does not sell products or services outside the employee benefits space. To that end, Defendant does not sell sales compensation products or services. [Fan Decl., ¶¶ 8, 10; Keninger Decl., ¶ 7.] ███████████████████████████████████ ██████████████████████████████. [Rogers Depo., pp. 16-17.]

5. Defendant primarily sells its products and services through employee benefits brokers. Employee benefits brokers operate similar to insurance agents. A company contracts with an employee benefits broker. The employee benefits broker then provides recommendations to the company about what types of benefits the company should offer. The employee benefits broker will also recommend the employee benefits providers that the company should use. Because different employee benefits providers focus on different types of benefits, the broker will recommend a combination of the providers that, together, best meet the company's needs. [Fan Decl., ¶¶ 13-15; Keninger Decl., ¶¶ 5-6, 8-11.]

6. Employee benefits brokers may provide a company with recommendations for the

2

entire range of benefits products. These include medical plans, dental plans, vision plans, and retirement planning. If the company is obtaining a group health plan for their employees, the employee benefits broker will serve as broker-of-record. For programs where a broker of record is not required, an employee benefits broker serves as an outside consultant for the company. [Fan Decl., ¶¶ 13-15; Keninger Decl., ¶¶ 5-6, 8-11.]

7.      Depending on the year, 70% to 90% of the sales of Defendant's software platform and services are done through employee benefits brokers. [Fan Decl., ¶ 13.]

8.      Examples of brokers who sell Defendant's software platform and services include WTW (formerly Willis Towers Watson), Aon, Mercer, Sequoia Benefits, MMA, and HUB International. [Fan Decl., ¶ 14.]

9.      There are some sales that do not involve a broker. These occur when a current customer recommends Defendant to a prospective customer or when a benefits professional from a customer moves to a job at a new company and recommends adding Defendant's products and services to the offerings of their new employer. In some instances, requests may come directly from a customer who submits a request through Defendant's website or reaches out to Defendant at a business event. [Fan Decl., ¶ 16.]

10.      When a company is interested in Defendant's services (either through a brokered transaction or otherwise), Defendant meets with the HR professionals from that company. Defendant interacts with the Director of Benefits, Benefits Managers, and/or Benefits Analysts. [Fan Decl., ¶¶ 11, 17.] The sales team sets up an initial meeting to discuss the customer's needs. Defendant works with the company to develop a complete picture as to what the customer is currently doing for its benefits program. Thereafter, Defendant has a second meeting where it provides a demonstration of its product along with a custom slide deck addressing the company's

3

issues identified in the first meeting.  Typically, there are multiple versions of this second meeting so the company can better understand what it means to be one of Defendant's customers.  If the customer would like to move forward, Defendant presents a proposal to the company.  Additional negotiation may occur.  Once an agreement is reached, Defendant provides the company with an order form, and the company has an opportunity to review it with their legal team.  The process from the first meeting to execution of the order form takes about four months for Defendant's smaller customers and six to nine months for Defendant's larger customers.  [Fan Decl., ¶ 17.]

11.     Defendant advertises its products and services through digital advertising and physical advertising.  The majority of Defendant's marketing and advertising of its products and services (in terms of the quantity of advertising) is digital advertising.  [Keninger Decl., ¶ 27.]

12.     Defendant's advertisements and promotions incorporate Defendant's brand image.  In 2021 and 2022, Defendant worked with a third parties to develop unique brand elements.  [Fan Decl., ¶ 33.]  These third parties developed a color scheme for Defendant.  That color scheme is shown below:

[Fan Decl., ¶ 33.]  Defendant uses this color scheme in its FORMA branded materials.  [*Id.*]

13.     The third parties who developed a brand image for Defendant also provided Defendant with character illustrations and related fun artwork.  Examples of these illustrations are shown below:



[Fan Decl., ¶ 33.]  Defendant incorporates the illustrations into its FORMA branded materials.  [*Id.*]

14.     One of the primary digital channels through which Defendant advertises its products and services is the employee benefits broker portal channel.  Employee benefits broker portals are web platforms that are run by the broker community.  The portals are set up to allow benefits providers to submit information as to the products and services they offer and do not offer.   Depending on the portal, an employee benefits provider may be able to include product brochures and videos about their products and services.  A broker who is working on a project for a company or is working on a Request for Proposal is able to review different providers and their offerings, and then select and bundle the providers and services that are the most appropriate for the company.  [Keninger Decl., ¶¶ 9-10.]

15.     Examples of employee benefits broker portals include Shortlister, MercerVIP,

Benefits Ally, Business Group on Health, and BenefitPitch.  Defendant's pages on Shortlister and MercerVIP are shown below:



[Keninger Decl., ¶ 10.]

16.     When Defendant has the ability to personalize how its information appears on a broker portal, Defendant incorporates its brand colors and illustrations.  Defendant's listing on BenefitPitch, which Defendant could personalize, is shown below:

6



[Fan Decl., ¶ 34.]

17.     Defendant's FORMA branded services are marketed on the website www.joinforma.com.  The website homepage features the FORMA logo in the control bar, above the large bold statement "Flexible benefits that."  A series of phrases ending the sentence "flexible benefits that" rotates through a number of options that describe Defendant's services. For example, the screenshot shown below reads "Flexible benefits that make every dollar count."



[Fan Decl., ¶ 35.]  Defendant's website used this same general layout since Defendant rebranded to FORMA.



[Fan Decl., ¶ 35.]  Each page of Defendant's website uses the brand image.  [Fan Decl., ¶¶ 33, 35.] For example, Defendant's website includes whimsical, exaggerated, and colorful character illustrations depicting people engaged in various wellness activities.  The FORMA logo is included in the header of every page.  [Fan Decl., ¶ 35.]



[Fan Decl., ¶ 35.]



[Fan Decl., ¶ 35.]

18.     Defendant's website also includes a blog that provides information about the categories of benefits that Defendant offers.  For example, blog articles address how LSAs operate and findings from surveys of employees regarding their employee benefits.  [Keninger Decl., ¶ 21.]

19.     Defendant maintains accounts on social media platforms under its FORMA name. The social media platform that Defendant primarily uses is LinkedIn.  LinkedIn is a business focused social media platform.  Businesses and business professionals are able to maintain

profiles and communicate about their professional activities through LinkedIn. [Keninger Decl., ¶ 13.]

20.     Defendant uses two approaches to promoting its FORMA products and services through LinkedIn. One approach is paid advertising, which uses "account-based marketing." Account-based marketing refers to directing paid advertisements to a specific segment of LinkedIn users through a target account list. Defendant's target account list has approximately 600 accounts representing benefits brokers and benefits professionals that Defendant wants to approach and target. Defendant exclusively targets its paid LinkedIn advertisements to those accounts. [Keninger Decl., ¶ 14.]

21.     The other approach to promoting Defendant's FORMA products and services on LinkedIn is through organic social content. Organic social content promotion refers to a user making posts on its page. The ability of a user to make or update posts on their page is free. Posts on the page are viewable by individuals who subscribe to or follow the user's page. The people who follow Defendant's page are employee benefits brokers and benefits professionals who purchase Defendant's products and services, as well as some of Defendant's investors and employees. [Keninger Decl., ¶ 15.]

22.     Examples of Defendant's posts on its company page on LinkedIn are shown below:





[Fan Decl., ¶ 34.]



[Keninger Decl., ¶ 15 and Ex. A.]

23.     Defendant also maintains social media pages under its FORMA name on Facebook (which includes Instagram), X (formerly Twitter), and TikTok.  Defendant engages in paid, account based marketing on Facebook.  Defendant uses organic posting on Facebook, X, and TikTok.  [Keninger Decl., ¶¶ 16-18.]

24.     Defendant offers a mobile application that allows access to Defendant's software platform.  The application is titled "Forma: Flexible Benefit Suite."  The application incorporates the brand image.  An example of the application at the Google Play store is shown below:



[Fan Decl., ¶ 34.]

25.    Defendant engages in some physical advertising.  Primarily, Defendant's physical advertising is directed to trade shows and conferences.  Examples of trade shows and conferences Defendant attends include EHIR, WorldatWork, HR Transform, Conference Board, PeopleTechPartners, The Corporate Wellness Institute, and UKG.  [Keninger Decl., ¶ 27, 30.] Defendant's trade show booths use Defendant's brand image and emphasize that Defendant offers employee benefits products and services.  [Fan Decl., ¶ 37.]




[Keninger Decl., ¶¶ 28-29.]



[Fan Decl., ¶ 37.]



15

[Fan Decl., ¶ 37.]

26.     In addition to trade shows and conferences, Defendant's physical advertising includes attending events hosted by employee benefits brokers.  For example, Defendant promotes its FORMA products and services at events hosted by WTW (formerly Willis Towers Watson)[2] and Mercer.  [Keninger Decl., ¶ 31.]

27.     Defendant hosts "lunch and learn" events for employee benefits brokers.  The lunch and learn events educate employee benefits brokers on how including Defendant's products and services in their benefits portfolio will better position them to compete in the marketplace.  [Keninger Decl., ¶ 32.]

28.     Defendant was formed in 2017.  [Fan Decl., ¶ 3.] At the time, Defendant used the name TWIC, the domain www.twic.ai for its website, and the TWIC logo shown below:



[Fan Decl., ¶ 19; Collins Decl., ¶¶ 4, 9.]

29.     By the end of February 2022, Defendant had 119 companies as its customers under contract.  Defendant's customers as of February 2022 included large enterprises with thousands or tens of thousands of employees, among them Lululemon, Zoom, and Microsoft.  At the end of 2023, Defendant had 290 companies as its customers under contract.  [Fan Decl., ¶ 42.]

30.     In 2021, Defendant decided to rebrand its business.  Defendant hired branding company Landscape to develop a new brand for the business.  Landscape investigated Defendant, its products and services, its marketplace, and its competitors.  Landscape then

---

2Fan Decl., ¶ 15.

proposed over 30 potential candidates for a new name for the company over multiple meetings spanning months. [Fan Decl., ¶¶ 20-29.]

31.     Defendant selected the name FORMA from the options provided by Landscape. Landscape also worked with a graphic designer to create logo options for Defendant. Of those, Defendant selected the logo shown below:



[Fan Decl., ¶ 30.]

32.     Defendant hired an attorney to help it assess the final name candidates and file an application to register its FORMA logo for "Software as a service (SAAS) services featuring computer software platforms for human resource professionals to offer personalized employee benefits, healthcare benefits, insurance benefits and lifestyle benefits to employees" in Class 42. The application was filed on February 15, 2022, and was assigned Serial No. 97/268559. [Fan Decl., ¶ 32 and Ex. A.]

33.     On December 1, 2022, the USPTO issued an office action in Serial No. 97/268559. The office action reported that "the trademark examining attorney searched the USPTO database of registered and pending marks and found no conflicting marks that would bar registration under Trademark Act Section 2(d)." The examiner requested amendments to the goods and services and the color description. [Fan Decl., Ex. A.]

34.     After Defendant resolved the examining attorney's concerns, the application was approved for publication. The publication period for Defendant's mark began January 24, 2023. [Fan Decl., Ex. A.]

35.     In the second half of February 2022, Defendant began to inform its existing customers about its upcoming name change.  [Collins Decl., ¶ 5 and Ex. A.]  Defendant hired a public relations firm, BOCA Communications, to help Defendant promote its new name.  [Fan Decl., ¶ 39.]  In early March 2022, Defendant began converting its online presence to FORMA. The name change was "officially" announced on March 8, 2022.  [Fan Decl., ¶ 30; Collins Decl., ¶ 7.]  Since March 8, 2022, Defendant used the FORMA name and logo.  [Keninger Decl., ¶ 3; Collins Decl., ¶ 6.]

36.     At the time Defendant chose its FORMA name and logo, Defendant did not know of Plaintiff or Plaintiff's use of FORMA.AI.  [Fan Decl., ¶ 32; Keninger Decl., ¶ 33; Collins Decl., ¶ 12.]

## PLAINTIFF FORMA AI

37.     Plaintiff Forma AI Inc. ("Plaintiff" or "FormaAI") is located in Toronto, Canada and offers products and services for sales performance and compensation management.  [D. 6-2, p. 2.] ██████████████████████████████████████████████████████████

███████████████████."  [Alazzam Depo., p. 14.]  Plaintiff's products and services include business consulting services with regards to sales performance; business collaboration services in the fields of sales performance management, sales compensation management, and technology selection; and SaaS software services for sales performance and compensation management.  [D. 6-2, p. 2.]

38.     Plaintiff describes its product as "an artificial intelligence based software platform."  [D.6, ¶7.]

39.     Plaintiff asserts that it "leads the sales performance and compensation management industry" through its software platform.  [D.6, ¶7.]

40. ███████████████████████████████████████████████████

███████████████████████████████." [Alazzam Depo., p. 53 and Ex 64.] Plaintiff

also promotes its products and services, encouraging customers to "optimize sales planning using

insights from Forma.ai's collective data model" and promoting its financial outcome modeling

and analytical modeling capabilities. [D.6-1, pp. 3-4.]

41. ████████████████



[Alazzam Depo., pp. 57-58.]

42. ████████████████████████████████████████

████████████████████████████████████

███████████████████████████." [Alazzam Depo., p. 80.]

43. ████████████████████████████████████

████████████████████████████." [Alazzam Depo.,

p. 83.]

44. Plaintiff contends that the market of related products and services is "HR Tech."

Plaintiff defines this market as "any technology that supports and enables the human resources

within a business." [Alazzam Depo., p. 36.]

45. ███████████████████████████████████████

███████████████████████████████████

█████████████████████████████████████████

██████████████████████████████████████████,

███████████████████████████████████████████████████████. [Lucas
Decl., Ex UUU (Resp. to Interrogatory No. 15); Alazzam Depo., pp. 74-78.]

     46.    ███████████████████████████████████. [Alazzam
Depo., p. 51.]

     47.    Plaintiff uses the FORMA.AI logo shown below:



[Lucas Decl. Ex. KKK, LLL.] █████████████████████████

████████████████████████████████████████████████████.

[Alazzam Depo., pp. 32-33 and Ex. 59.] █████████████████████

███████████████████████████████████████. [*Id.*]

     48.    ██████████████████████████████

████████████████. [Alazzam Depo., pp. 39-40.] ████████████████

████████████████████████████████████. [Alazzam
Depo., pp. 54-55.]

     49.    Plaintiff's primary source of advertising is its www.forma.ai website. [Lucas
Decl., Ex. UUU (Resp. to Interrogatory No. 9).] █████████████████████

█████████████████████. [Buchanan Depo., p. 18.] ████████████████

████████████████████████████████████████████

███████. [Buchanan Depo., p. 19.]

     50.    █████████████████████████████████

████████████. [Buchanan Depo., p. 17; Alazzam Depo., pp. 89-93, 96-97 and Exs. 67 &
69.] ███████████████████████████████████████



[Alazzam Depo., Ex 67.]

. [Alazzam Depo., Ex. 67.]

51.







[Lucas Decl., Ex. KKK, LLL.] ██████████████████████████

████████████████████████████████████

According to Plaintiff, its "software platform is primarily offered [and] sold…online.  The

Internet is the relevant channel of trade."  [Lucas Decl., Ex. UUU (Resp. to Interrogatory Nos. 2,

4)]  Plaintiff "primarily advertises and promotes its services under [FORMA.AI] in the United

States via its www.forma.ai website."  [*Id.* (Resp. to Interrogatory No. 9).]

      58.   ████████████████████████████████████

████████████████████████████████████

████████████████████████████████████



59.

## PLAINTIFF'S FORMA.AI REGISTRATION AT THE USPTO

60.     On April 1, 2022, Plaintiff applied to register FORMA.AI with the USPTO. Plaintiff's application sought protection of FORMA.AI in Class 35 for "Business consultation services, namely sales performance consultation in the field of reporting, modeling, analyzing, and improving programs for sales compensation, segmentation, sales territory design, quota management, revenue productivity, and benchmarking; Business collaboration services, namely, fostering knowledge sharing in the fields of sales performance management, sales compensation management, and technology selection."  Plaintiff's application also sought protection of FORMA.AI in Class 42 for "Software as a service (SAAS) services featuring software for sales performance and compensation management."  The application was assigned Serial No. 97/342791.

61.     On January 19, 2023, the USPTO examined the application.  This examination included conducting a search as to whether there were any registrations or pending applications

that could give rise to a likelihood of confusion.  The USPTO did not find any active registration or pending application that was likely to be confused with the FORMA.AI application, and advanced the mark to publication.  The FORMA.AI application published in February 2023, and a registration certificate issued in May 2023.  The mark was assigned Reg. No. 7,048,525.

62.     At the time of its application, Plaintiff did not inform the USPTO that *forma* is a Latin word, nor did Plaintiff provide an English translation for *forma*.  At no time prior to the registration of the FORMA.AI mark, did Plaintiff identify *forma* as a Latin word or provide an English translation of *forma*.

63.     One meaning of the Latin word *forma* is "model" in English.  [Lucas Decl., Ex. III, JJJ.]

64.     The abbreviation "AI" stands for "artificial intelligence."  Tech companies frequently use the top level domain .ai to "associate themselves with AI technology."  [Lucas Decl., Ex. SSS, TTT.]

### PLAINTIFF'S COMPLAINTS ABOUT COMMUNICATIONS RELATED TO DEFENDANT

65.     Plaintiff identified 27 communications that Plaintiff asserts are instances of actual confusion.  [Lucas Decl., Ex. UUU (Resp. to Interrogatory No. 8); Buchanan Depo., p. 26-27.]

66.     Plaintiff has not identified any of the individuals or companies it asserts are confused as witnesses in this case.  [Lucas Decl., Ex. VVV.]

67.     Plaintiff did not produce evidence that any of the individuals it asserts are confused were involved in the decision to purchase Defendant's products and services.  [Lucas Decl., Ex. UUU (Resp. to Interrogatory No. 8).]

68.     The first incident Plaintiff asserts is actual confusion is an April 17, 2022 Medhealth Outlook post on LinkedIn where Plaintiff was tagged while the poster shared an

article about Defendant.  [Lucas Decl., Ex. UUU (Resp. to Interrogatory No. 8).] ████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

██████████████████████████████████████

    69.    ███████████████████████████████████

██████████████████████████████████████████████████████

██████████████████████████████████████████████████████

██████████████████████████████████████████████████████

█████████████████████████████████████████████

████████████

    70.    ███████████████████████████████████

████████████████████████████████████████████████████

██████████████████████████████████████████████████████████

█████████

71.    Five of the incidents Plaintiff asserts are confusion are with individuals associated with Rubrik.  In particular, Plaintiff asserts that communications received on May 4, 2022 and May 11, 2022 from Rubrik, two communications on July 14, 2022 from Elisabeth Zarate of Rubrik, and a December 23, 2022 communication from Vijay Harihara Iyer Sankar of Rubrik are instances of confusion.  [Lucas Decl., Ex. UUU (Resp. to Interrogatory No. 8).] ████████████

████████████████████████████████████████████████████████

██████████████████████████████████████████

72.    Three of the incidents Plaintiff asserts are confusion are with individuals associated with Grammarly.  In particular, Plaintiff asserts that communications received June

23, 2022 from Angela Cole of Grammarly, June 27, 2022 from Bei Zhang of Grammarly, and June 30, 2022 from Olena Matokhina of Grammarly are instances of confusion. [Lucas Decl., Ex. UUU (Resp. to Interrogatory No. 8).] ███████████████████████████████████

███████████████████████████████████████████████████████████████████

██████████████

73.     When Plaintiff identified concerns with Rubrik and Grammarly, Defendant investigated those concerns.  In both instances, Defendant learned that these customers had made a clerical error in updating its materials about Defendant.  When Defendant used the name TWIC, its website was www.twic.ai and its support email was support@twic.ai.  When Defendant rebranded to FORMA, its website URL became www.joinforma.com and its support email became support@joinforma.com.  In some materials about the update, Rubrik and Grammarly took existing materials with the support@twic.ai email address and changed all references to "twic" to "forma," resulting in those materials incorrectly identifying the support address for Defendant as support@forma.ai.  Its employees then used those materials and contacted support@forma.ai when they needed help with their benefits from Defendant. Defendant worked with Grammarly and Rubrik to try to find and update the materials with this error.  [Collins Decl., ¶¶ 8-9.]

74.     Plaintiff's response to Interrogatory No. 8 identifies a June 11, 2022 tag on LinkedIn by Sammy Totah of BOCA Communications as an instance of actual confusion. [Lucas Decl., Ex. UUU (Resp. to Interrogatory No. 8).]  Defendant investigated Mr. Totah's post and learned that the tag was a mistag and that Mr. Totah was not confused between Plaintiff and Defendant.  [Fan Decl., ¶ 46.] ██████████████████████████████████

██████████████████████████

75.     Plaintiff's response to Interrogatory No. 8 identifies a December 2022 post on LinkedIn that tagged Plaintiff's account as an incident of confusion.  [Lucas Decl., Ex. UUU (Resp. to Interrogatory No. 8)]  Plaintiff asserts that this tag "falsely associated [Plaintiff] with the services and business activities of Crosschq."  [Lucas Decl., Ex. UUU (Resp. to Interrogatory No. 8)].  The post about which Plaintiff complains is shown below:



[Lucas Decl., Ex. RRR.] ███████████████████████████████████

███████████████████

76.     Plaintiff's response to Interrogatory No. 8 identifies a July 1, 2022 communication from Nichole O'Such at Liftoff as an instance of actual confusion.  [Lucas Decl., Ex. UUU (Resp. to Interrogatory No. 8).]  Ms. O'Such sent her communication to info@forma.ai.  [Lucas Decl., Ex. MMM.] ███████████████████████████

████████████████████████████

77.     Plaintiff's response to Interrogatory No. 8 identifies a communication sent

through Hubspot from an employee of Clari as an instance of actual confusion.  [Lucas Decl., Ex. UUU (Resp. to Interrogatory No. 8).]  ████████████████████████████████

████████████████████████████

78.     Plaintiff's response to Interrogatory No. 8 identifies a December 21, 2022 communication from Natasha Inniss of Clever as an instance of actual confusion.  [Lucas Decl., Ex. UUU (Resp. to Interrogatory No. 8).]  Ms. Inniss sent her communication to support@forma.ai.  [Lucas Decl., Ex. OOO.]  ████████████████████████████

████████████████████████████

79.     Plaintiff's response to Interrogatory No. 8 identifies a December 21, 2022 communication from Lauren Clasper of National Wildlife Federation as an instance of actual confusion.  [Lucas Decl., Ex. UUU (Resp. to Interrogatory No. 8).]  Lauren Clasper had been given instructions to "contact Twic's member support team at support@forma.ai" if she had questions.  [Lucas Decl., Ex. NNN.]  ████████████████████████

████████████████████████████████

80.     Plaintiff's response to Interrogatory No. 8 identifies two voice mails, one from Robert Raitz and one from Hope Denton, as instances of confusion.  [Lucas Decl., Ex. UUU (Resp. to Interrogatory No. 8).]  ████████████████████████████

████████████████████████

81.     Plaintiff's response to Interrogatory No. 8 asserts that "a competitor of plaintiff associated plaintiff with CaptivateIQ, Notion and Ironclad" through a LinkedIn post.  [Lucas Decl., Ex. UUU (Resp. to Interrogatory No. 8).]  Below is a copy of the post:



[Lucas Decl., Ex. PPP.] ████████████████████████████████████
████████████████

82.     Plaintiff's response to Interrogatory No. 8 identifies a LinkedIn account owned by

Kelly Huang as an instance of actual confusion in the United States.  [Lucas Decl., Ex. UUU

(Resp. to Interrogatory No. 8).]  Ms. Huang's account identifies her location as Taiwan.  [Lucas

Decl., Ex. QQQ] ███████████████████████████████████████████

████████████████████

83.     Plaintiff's first supplemental response to Interrogatory No. 8 identifies three

communications Plaintiff asserts were instances of confusion.  [Lucas Decl., Ex. UUU (Resp. to

Interrogatory No. 8).] ███████████████████████████████████

██████████████████████████████████████████████████████

████████████████████████████

84.     From March 8, 2022 through June 2024, Defendant received 420,672 emails from users of its software or individuals interested in learning more about Defendant's software.  [Fan Decl., ¶ 41.]

85.     Other than the communications identified by Plaintiff in its interrogatory responses, Defendant is not aware of any communications sent to Plaintiff that were intended for Defendant.  [Fan Decl., ¶¶ 43-45; Collins Decl., ¶ 11.]

86.     Defendant is not aware of any communications sent to Defendant that were intended for Plaintiff.  [Fan Decl., ¶ 45; Keninger Decl., ¶ 34; Collins Decl., ¶ 11.]

87.     Plaintiff did not identify any of the individuals or companies in its response to Interrogatory No. 8 as a witness in this case.  [Lucas Decl., Ex. VVV.]

88.     ███████████████████████████████████████████████████
███████████████████████████████████

**EVIDENCE OF USE OF "FORMA" BY THIRD PARTIES**

89.     Third parties are using the term "FORMA" as part of their trademarks.

90.     As shown below, there are at least 25 third parties who own live U.S. trademark registrations and allowed applications for software products or services in International Classes 9 and 42, the software classes.

|   | Application Number | Registration Number | Word Mark |
|---|---|---|---|
| 1 | 87178690 | 5546523 | A PRO-FORMA IN YOUR POCKET |
| 2 | 90786607 |  | AUTODESK FORMA |
| 3 | 90060165 | 6277107 | COFORMA |
| 4 | 87156316 | 5231351 | FLOWFORMA |
| 5 | 87075353 | 5782032 | FORMA |
| 6 | 97088526 |  | FORMA VISION |
| 7 | 97088493 |  | FORMA |
| 8 | 87871664 | 5772904 | INFORMAI |
| 9 | 87694161 | 5681707 | MYPERFORMA |

|    | Application Number | Registration Number | Word Mark |
|----|--------------------|--------------------|-----------|
| 10 | 78428922 | 3330596 | NEWFORMA |
| 11 | 86808317 | 5402093 | NOVA FORMA |
| 12 | 79314032 | 6805589 | NUFORMA |
| 13 | 90278759 | 6611137 | |
|    | 90278839 | 6611138 | ONEFORMA |
| 14 | 90172331 | 6577800 | PERFORMA LABS SHARPER MINDS SAFER OUTCOMES |
|    | 90172336 | 6577801 | PERFORMA LABS |
| 15 | 90723564 | 7013364 | PERFORMA |
| 16 | 79337767 | 6927032 | PRO FORMA BRAND DNA |
| 17 | 88692725 | 6782791 | PROFORMA PROSTORES |
| 18 | 88391506 | 6342218 | |
|    | 88391828 | 6389862 | PROFORMA PROVISION |
|    | 88360649 | 6389830 | |
| 19 | 88798013 | 6286048 | SAAS PROFORMA |
| 20 | 78269124 | 2862807 | SCIFORMA |
| 21 | 97571021 | 7127209 | THOUGHTFORMA |
| 22 | 88200180 | 5781496 | TRANSFORMAI |
| 23 | 90035382 | 6609316 | UNITY FORMA |
| 24 | 90786607 | | AUTODESK FORMA |
| 25 | 97583359 | 7200343 | PERFORMASHAPE |

[Lucas Decl., Exs. A-VV (copies of the TSDR records, which are incorporated herein by reference).] There are also nine live U.S. trademark registrations and pending applications including FORMA for goods and/or services related to business technology or consulting in Class 35.

|   | Application Number | Registration Number | Word Mark |
|---|--------------------|--------------------|-----------|
| 1 | 90060165 | 6277107 | COFORMA |
| 2 | 87887266 | 5626905 | DEALFORMA |
| 3 | 87156316 | 5231351 | FLOWFORMA |
| 4 | 90542067 | 6721764 | FORMA |
| 5 | 85936211 | 4557242 | FORMA TAX |
| 6 | 78895975 | 3307028 | INFORMA |
| 7 | 78428922 | 3330596 | NEWFORMA |

| | Application Number | Registration Number | Word Mark |
|---|---|---|---|
| 8 | 90278759 | 6611137 | |
| | 90278839 | 6611138 | ONEFORMA |
| 9 | 88267463 | 5855797 | PERFORMA ENTERPRISE |

[Lucas Decl., Ex. A-VV (copies of the TSDR records, which are incorporated herein by reference).]

91. After Plaintiff accused Defendant of infringement, Defendant's attorney sent a letter to Plaintiff's attorney that included a chart of third parties who use FORMA. The letter explained that Defendant did not violate Plaintiff's rights. [D.6-7.]

92. Third parties make other uses of FORMA in names for consulting services, as well as technology products and services, that can be used by HR professionals.

93. HR professionals are responsible for recruiting employees, training employees, administering benefits, administering compensation, and engaging in employee performance management. [Lucas Decl., Ex. WW.]

94. Sciforma uses the mark SCIFORMA for an eLearning program and training services for project managers and team leaders at a company. [Lucas Decl., Ex.XX.]

95. Digiforma uses the mark DIGIFORMA for an online platform for professional development for a company's employees. [Lucas Decl., Ex. YY.]

96. Forma Life Science Marketing uses the mark FORMA for employee training. [Lucas Decl., Ex. ZZ.]

97. Forma Leaders uses the mark FORMA LEADERS for training and coaching for company executives. [Lucas Decl., Ex. AAA.]

98. FlowForma uses the mark FLOWFORMA for HR process automation. [Lucas Decl., Ex. BBB.]

99.     BPMobile offers a product under the mark "FORMA: AI PDF Editor & Creator." The software product may be used for filling in various types of documents, to include tax forms. [Lucas Decl., Ex. CCC.]

100.    PerformaApps uses the mark PERFORMA APPS for ERP software. [Lucas Decl., Ex. DDD.]

101.    Singlewire Software offers a mobile application under the mark INFORMACAST that allows a workplace to send alerts to its employees, such as an alert informing the employees when the office is closed due to inclement weather. [Lucas Decl., Ex. EEE.]

102.    Forma Vision offers teleconference software under the mark FORMA VISION. [Lucas Decl., Ex. FFF.]

103.    Forma LMS offers an open source learning management system for corporate training under the mark FORMA LMS. [Lucas Decl., Ex.GGG.]

104.    Forma Consultants uses the mark FORMA for recruiting, hiring, and managing offshore employees for a company. [Lucas Decl., Ex. HHH.]

105.    ████████████████████████████████████
████████████████████████████████████████████
████████████████████████████████████████████
████████████████████████████████████████
████████████████████████████████████████████
████████████████████████████████████████
███████████████████████████████

Respectfully submitted this the 9th day of August, 2024.

**Michael Best & Friedrich, LLP**
**Attorneys for Twic, Inc.**

By:    */s/ Emily M. Haas*
       Emily M. Haas
       NC State Bar No. 39,716
       4509 Creedmoor Road, Suite 501
       Raleigh, North Carolina 27612
       Telephone: (984) 220-8750
       Facsimile:  (877) 398-5240
       Email: emhaas@michaelbest.com

**CERTIFICATE OF SERVICE**

      I hereby certify that on this the 9th day of August, 2024, the foregoing **DEFENDANT TWIC, INC.'S LOCAL CIVIL RULE 56.1 STATEMENT OF MATERIAL FACTS** was filed using the Court's CM/ECF filing system, which will provide notice of the filing by electronic mail to all counsel of record.

      By:      */s/ Emily M. Haas*
               Emily M. Haas
               NC State Bar No. 39,716
               4509 Creedmoor Road, Suite 501
               Raleigh, North Carolina 27612
               Telephone: (984) 220-8750
               Facsimile:  (877) 398-5240
               Email: emhaas@michaelbest.com

               *Attorney for Twic, Inc.*