## THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF NORTH CAROLINA
## WESTERN DIVISION
## Case No: 4:23-CV-00077-BO

| | | |
|---|---|---|
| FORMA AI INC., | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | **DEFENDANT'S RESPONSE TO** |
| v. | ) | **PLAINTIFF'S STATEMENT OF** |
| | ) | **MATERIAL FACTS** |
| TWIC, INC., | ) | |
| | ) | |
| Defendant. | ) | |

Pursuant to Local Civil Rule 56.1, Defendant Twic, Inc. submits this Opposition

Statement to Plaintiff Forma AI Inc.'s Statement of Material Facts. Defendant responds to

Plaintiff's Statement of Material Facts as follows:

1.      Defendant admits that Plaintiff provides technology for the compensation of sales

professionals. Except as admitted, denied. Plaintiff has not submitted competent evidence in

support of the denied portions of this statement. Defendant denies that Plaintiff produced

evidence in discovery that it "is a leading provider" of sales compensation technology.

Defendant further denies that "human resources departments utilize" Plaintiff's technology in

conjunction with an employee's "total benefits package." The only evidence Plaintiff cites in

support of its assertions is the *Declaration of Michael Buchanan*, hereinafter "Buchanan Decl."

In particular, the only evidence Plaintiff cites in support of its assertions regarding its product

being for "human resources departments" is a conclusory sentence in paragraph 4 of the

Buchanan Declaration. Paragraph 4 of the Buchanan Declaration cites no evidence or foundation

to support Plaintiff's assertion. Plaintiff failed to submit competent evidence that it provides

technology for all or even most functions of human resources. For example, Plaintiff did not

identify it provides technology that provides hiring and onboarding functionality, training

employees, resume reviewing functionality, and/or functionality to ensure compliance with employment laws. [See, e.g., D.30-6, p. 80 (providing examples of human resources functions).] Plaintiff's statements to the government are that Plaintiff provides "sales performance consultation," and "software for sales performance and compensation management." [D.6-2; D37, ¶ 60.] Plaintiff's statements to consumers are directed to sales compensation. [2d Lucas Decl., Ex. A; D.34, pp. 66-99.]

2.     It is admitted that Plaintiff provides a cloud-based software platform (also known as Software as a Service or "SaaS" platform) that uses artificial intelligence features to determine compensation for sales employees. Except as admitted herein, denied. Plaintiff has not submitted competent evidence in support of allegations of this paragraph. The only evidence Plaintiff cites in support of its assertions regarding its product being for "human resources departments" is a conclusory sentence in paragraph 4 of the Buchanan Declaration. Paragraph 4 of the Buchanan Declaration cites no evidence or foundation to support Plaintiff's assertion. Plaintiff failed to submit competent evidence that it provides technology for all or even most functions of human resources. For example, Plaintiff did not identify it provides technology that provides hiring and onboarding functionality, training employees, resume reviewing functionality, and/or functionality to ensure compliance with employment laws. [See, e.g., D.30-6, p. 80 (providing examples of human resources functions).] Plaintiff's statements to the government are that Plaintiff provides "sales performance consultation," and "software for sales performance and compensation management." [D.6-2; D37, ¶ 60.] Plaintiff's statements to consumers are directed to sales compensation. [2d Lucas Decl., Ex. A; D.34, pp. 66-99.]

3.     It is admitted that Plaintiff's software platform evaluates monetary compensation. Except as admitted herein, denied. Plaintiff has not submitted competent evidence in support of

allegations of this paragraph. The only evidence Plaintiff cites in support of its assertions regarding its product being a "human resources software platform" that provides "other non-monetary benefits….as part of [an employee's] 'total rewards'" is a conclusory sentence in paragraph 5 of the Buchanan Declaration. Paragraph 5 of the Buchanan Declaration cites no evidence or foundation to support Plaintiff's assertion. Plaintiff failed to submit competent evidence that it provides technology for all or even most functions of human resources. For example, Plaintiff did not identify it provides technology that provides hiring and onboarding functionality, training employees, resume reviewing functionality, and/or functionality to ensure compliance with employment laws. [See, e.g., D.30-6, p. 80 (providing examples of human resources functions).] Plaintiff's statements to the government are that Plaintiff provides "sales performance consultation," and "software for sales performance and compensation management." [D.6-2; D37, ¶ 60.] Plaintiff's statements to consumers are directed to sales compensation. [2d Lucas Decl., Ex. A; D.34, pp. 66-99.]

4. It is admitted that Plaintiff provides consultation services directed to sales performance consultation in the field of reporting, modeling, analyzing, and improving programs for sales compensation, segmentation, sales territory design, quota management, revenue productivity and benchmarking. To the extent Plaintiff seeks to assert its consultation services extend beyond these services, this statement is denied. The only evidence Plaintiff cites in support of its assertions that it provides substantially related business consultation and collaboration services is a conclusory sentence in paragraph 5 of the Buchanan Declaration. Paragraph 5 of the Buchanan Declaration cites no evidence or foundation to support Plaintiff's assertion.

5.    It is admitted that Plaintiff produced in discovery a document that purports to show Plaintiff used its FORMA.AI mark in a contract for its sales compensation technology platform in ███████████████████████████████████████████████ ███████████████████████. [2d Declaration of Andrew Lucas ("2d Lucas Decl."), Ex. A.] Except as admitted herein, denied. Plaintiff has not submitted competent evidence in support of this statement. Plaintiff did not submit and authenticate the document at Exhibit A in the second Lucas Declaration, and this document merely demonstrates what Defendant understands a document Plaintiff produced is purported to show; Defendant is unable to verify the authenticity of the specific contents of the document. It is further denied that the market in which Plaintiff and Defendant sell their services is the general "human resources technology industry." Plaintiff failed to submit competent evidence that it provides technology for all or even most functions of human resources. For example, Plaintiff did not identify it provides technology that provides hiring and onboarding functionality, training employees, resume reviewing functionality, and/or functionality to ensure compliance with employment laws. [See, e.g., D.30-6, p. 80 (providing examples of human resources functions).] Plaintiff's statements to the government are that Plaintiff provides "sales performance consultation," and "software for sales performance and compensation management." [D.6-2; D37, ¶ 60.] Plaintiff's statements to consumers are directed to sales compensation. [2d Lucas Decl., Ex. A; D.34, pp. 66-99.] It is denied that Plaintiff used its mark across the United States in September 2018. The only evidence Plaintiff cites in support of its assertions regarding using its mark in the United States in September 2018 is a conclusory sentence in paragraph 6 of the Buchanan Declaration. Paragraph 6 of the Buchanan Declaration cites no evidence or foundation to support Plaintiff's assertion.

4

6. It is admitted that Plaintiff filed U.S. Trademark Application Serial No. 97/342791 for the FORMA.AI mark with the USPTO on April 1, 2022, and that Plaintiff claimed a date of first use in commerce for its Class 42 software services of September 2018.

7. It is admitted that U.S. Trademark Application Serial No. 97/342791 for the FORMA.AI mark matured to Reg. No. 7,048,525 on May 9, 2023, and that the USPTO issued a registration certificate for the same.

8. It is admitted that Plaintiff produced documents in discovery that purported to show that, prior to February 2022, Plaintiff used its FORMA.AI mark in contracts with the following companies located in the United States: █████████████████████████

████████████████████████████████████████████████████

██████████████████████████████████████████████████

██████████████████████████████████████████████████

████████████████████████████████████

██████████████████████████████████████████████████

██████████████████████████████████████████

████████████████████████████████████████████████

████████████████████████████████████████████████

██████████████████████████████████████████████████

██████████████████████████████████████████████████

██████████████████████████████████████████████

██████████████████████████████████████████████████

██████████████████████████████████████████████████

█████ Except as expressly admitted herein, denied. Plaintiff has not submitted competent

evidence in support of this statement to the extent Plaintiff seeks to claim it used the FORMA.AI mark throughout the states of ███████████████████████████████████████

███████████████████ Plaintiff cites a conclusory sentence in paragraph 8 of the Buchanan Declaration to support this assertion. Paragraph 8 of the Buchanan Declaration cites no evidence or foundation to support Plaintiff's assertion. Plaintiff also cites D.1-12, pp. 27-40, which are unverified, unsubstantiated documents that purport to be excerpts from agreements. The D.1-12 pages provide no evidence that these agreements were ever delivered or seen by the redacted parties in these excerpts. Furthermore, the documents cited in this paragraph by Defendant are not authenticated and therefore cannot demonstrate Plaintiff's actual use; such documents are merely submitted to show Plaintiff's discovery materials contradict Plaintiff's statement of facts and therefore give rise to a genuine issue of material fact. ████████████████████



█████████████████████████████████████████████████

██████████████████████████████████. [2d Lucas Decl., Ex. B; D.36, pp. 20-22.] █████████████████████████████████████

████████████████████████████████████████████████

██████ [2d Lucas Decl., Ex. D; D.36, pp. 20-22.] █████████████████████████

█████████████████████████████████████. [2d Lucas Decl., Ex. ; D.36, pp. 20-22.] ██████████████████████

██████████████████. [*Id.*] ███████████████████████████

████ [D.36, pp. 20-22], and ██████████████████████████████

██████

     9.     It is admitted that Plaintiff owns rights in FORMA.AI for:

In Class 35: Business consultation services, namely, sales performance consultation in the field of reporting, modeling, analyzing, and improving programs for sales

6

compensation, segmentation, sales territory design, quota management, revenue productivity, and benchmarking; Business collaboration services, namely, fostering knowledge sharing in the fields of sales performance management, sales compensation management, and technology selection; and

In Class 42: Software as a service (SAAS) services featuring software for sales performance and compensation management.

Except as expressly admitted herein, denied. Plaintiff has not submitted competent evidence in support of this statement. The only evidence Plaintiff cites in support of its assertion is a conclusory sentence in paragraph 9 of the Buchanan Declaration. Paragraph 9 of the Buchanan Declaration cites no evidence or foundation to support Plaintiff's assertion. ███████████

███████████████████████████████████████████████

███████████████████████████ [D.33, pp. 23-24.]

10. Denied. Plaintiff has not submitted competent evidence in support of this statement. The only evidence Plaintiff cites in support of its assertions regarding the time, money, and resources marketing, advertising, promoting and expanding upon its business services under its mark is a conclusory sentence in paragraph 9 of the Buchanan Declaration. Paragraph 9 of the Buchanan Declaration cites no evidence or foundation to support Plaintiff's assertion. ███████████████████████████████████████

███████████████████████████████████████████████

███████████████████████████. [D.33, pp. 18-19 and Ex. 79..] The only evidence Plaintiff cites in support of its assertions regarding its product being for "human resources departments" is the same conclusory sentence in paragraph 9 of the Buchanan Declaration. Plaintiff failed to submit competent evidence that it provides technology for all or even most functions of human resources. For example, Plaintiff did not identify it provides technology that provides hiring and onboarding functionality, training employees, resume reviewing functionality, and/or functionality to ensure compliance with employment laws. [*See*,

*e.g.*, D.30-6, p. 80 (providing examples of human resources functions).]  Plaintiff's statements to the government are that Plaintiff provides "sales performance consultation," and "software for sales performance and compensation management."  [D.6-2; D37, ¶ 60.]  Plaintiff's statements to consumers are directed to sales compensation.  [2d Lucas Decl., Ex. A; D.34, pp. 66-99.]

11.     Denied. Plaintiff has not submitted competent evidence in support of this statement. The only evidence Plaintiff cites in support of its assertions regarding the commercial strength, distinction, reputation, and goodwill of its asserted mark is a conclusory sentence in paragraph 10 of the Buchanan Declaration.  Paragraph 10 of the Buchanan Declaration cites no evidence or foundation to support Plaintiff's assertion.  Plaintiff relies upon a self-serving, evidence-free sentence from Mr. Buchanan regarding the commercial strength, distinction, reputation, and goodwill of its mark.  ███████████████████████████████████

████████████████████████████████████████████████████████████████

████████████  [D.33, p. 24.]

12.     Admitted.

13.     Admitted.

14.     It is denied that the market in which Plaintiff and Defendant sell their services is the general "human resources technology industry."  Plaintiff failed to submit competent evidence that it provides technology for all or even most functions of human resources.  For example, Plaintiff did not identify it provides technology that provides hiring and onboarding functionality, training employees, resume reviewing functionality, and/or functionality to ensure compliance with employment laws.  [*See, e.g.,* D.30-6, p. 80 (providing examples of human resources functions).]  Plaintiff's statements to the government are that Plaintiff provides "sales performance consultation," and "software for sales performance and compensation

8

management." [D.6-2; D37, ¶ 60.] Plaintiff's statements to consumers are directed to sales compensation. [2d Lucas Decl., Ex. A; D.34, pp. 66-99.] To the extent Plaintiff suggests Defendant testified at deposition that Defendant's market is "the human resources technology industry," such suggestion misrepresents Defendant's testimony. Defendant testified that its:

> understanding of the HR industry is that it breaks down into three primary components.
>
> The first one would be what we refer to as core compensation. So this would include salary and equity for the most part. And that team's core job is to make sure that there is equitability across everybody's main compensation, salary, and equity.
>
> There is also an operations team. This people operations or HR operations team is typically focused on the operational side of the HR function which would include running payroll, maintain a core HR information system, HR training…., onboarding of new employees, things of that nature.
>
> There is also a total reward team on the other side that deals with everything in benefits essentially. So medical, dental, vision, and the others. Those in the HR industry typically has [sic] a very clear understanding of these different practices in the HR profession.

[Deposition of Jason Fan ("Fan Depo."), pp. 176-177.] Defendant also testified at deposition that it:

> define[s] our market in the HR space to be primarily in employee benefits. And even in the employee benefits industry itself, it further breaks down into many different categories. And this is the case because the expenses that goes [sic] into the benefits line item is usually very sizeable for the majority of the businesses in the United States. This would either be the second or third largest expense on their P&L right behind payroll and sometimes, you know, on par with real estate cost. This means the money could go towards medical plans, dental and vision plans, 401(k) retirement plans, various different types of retirement plans, mental health benefits, caregiving benefits, pretax spending programs, which is part of our product offering, FSA and HAS, and the list goes on and on. That's how I define the HR industry that we operate in, what we call HR benefits.

[Fan Depo., pp. 177-178.] Mr. Fan's testimony at summary judgment is consistent with Defendant's testimony at deposition. Mr. Fan testified at summary judgment:

> Twic's market for its services is the employee benefits components of the Human Resources (HR) space. We understand the HR industry to have three primary components. The first is "core compensation," which would include salary and equity. That team's job is to make sure that there is equitability across employees' main

compensation, salary, and equity. The second is the operations team. An HR operations team is typically focused on the operational side of the HR function, which would include running payroll, maintaining a core HR information system, HR training, onboarding new employees, and other things of that nature. The third component is the total rewards team. This team deals with everything in benefits. It is my experience that the people who work in the HR industry have a clear understanding that these are three different areas in the HR profession.

[D.30-1, ¶10.]

15.     Defendant admits that it made a public announcement on its website at

www.joinforma.com that it was rebranding from TWIC to FORMA.  Defendant denies that

Defendant's use of FORMA infringes any trademark rights of any other party.  Plaintiff has not

provided evidence of any ruling of infringement from any court or tribunal.

16.     It is admitted that Plaintiff sent Defendant cease and desist letters on or around

April 18, 2022; May 12, 2022; June 14, 2022; and February 7, 2023, and that, to send such

letters, Plaintiff had to have become aware of Defendant's rebrand.

17.     It is admitted that, in its letters, Plaintiff objected to Defendant's use of FORMA

with Defendant's services.  Except as admitted herein, denied.  Defendant denies that

Defendant's use of FORMA infringes any trademark rights of any other party.  Plaintiff has not

provided evidence of any ruling of infringement from any court or tribunal.  It is denied that the

materials provided by Plaintiff are examples of actual confusion.  Plaintiff does not have

evidence that any of the individuals involved in the incidents were confused.  Plaintiff admits

that ███████████████████████████████.  [D.33, pp. 25-44.]  Plaintiff did not submit

testimony from any of these individuals that they were confused.  Plaintiff's conjecture that these

individuals were confused is not competent evidence of confusion.  To the extent Plaintiff seeks

to submit documents that include unsworn statements from these third parties, such evidence is

inadmissible hearsay.  The only admissible evidence regarding these instances of confusion is

that Defendant investigated some of them and discovered in its investigation that no confusion

occurred but, instead, clerical errors and mistags led to mistakes unrelated to any belief that there was an association between Plaintiff and Defendant. [D.30-1, ¶ 46; D.30-3, ¶ 9.] It is denied that Plaintiff provided Defendant with geographic-specific evidence substantiating Plaintiff's senior trademark rights in the United States. Plaintiff provided Defendant with highly redacted excerpts from agreements and with unsubstantiated lists. [D.1-12, pp. 26-41.]

18.     Admitted.

19.     It is admitted that Defendant's initial answer to Interrogatory No. 12, which asked for the information supporting the second affirmative defense, as follows:

> Defendant objects to this request to the extent it seeks materials covered by the attorney-client privilege or the work product doctrine. Defendant objects to this request as premature, as Defendant needs to obtain materials from Plaintiff to confirm Plaintiff's prior claims regarding where it used its mark in order to "identify all geographic regions in the United States for which Defendant purports to have priority." Subject to this objection, Defendant states as follows:
>
> Defendant rebranded to FORMA on March 8, 2022. Defendant had customers and/or users in every state in the United States who would have seen the new brand at that time. Furthermore, Defendant filed its trademark application as an intent-to-use application. That application was filed on February 15, 2022. Once the USPTO grants Defendant's registration, Defendant's nationwide priority date will be February 15, 2022. Plaintiff is a Canadian company that has done limited business in the United States. Prior to this lawsuit, Plaintiff provided Defendant's attorneys a list of locations that Plaintiff claimed it did business in the United States under FORMA.AI prior to Defendant's use of FORMA. These locations represented a fraction of the United States. Based on the materials provided, Defendant has been unable to verify whether Plaintiff actually did use FORMA.AI in these areas. Even if Plaintiff could show use in those areas, those geographic regions consist of a handful of cities in six states. After Plaintiff produces material to verify its assertions as to the areas and dates where it used FORMA.AI, Defendant will supplement this response to identify the regions where Defendant has priority.

[D.27-2, pp. 18-21.] To the extent Plaintiff seeks to imply Defendant's answer contained or did not contain anything that was not expressly set forth therein, this statement is denied.

20.     It is denied that Defendant later "changed" its initial response to Interrogatory No. 12. To date, Defendant has not amended its initial response to Interrogatory No. 12 and the

initial response continues to read as set forth in Defendant's response in Paragraph 19 above. It is admitted that Defendant *supplemented* its answer to incorporate the initial response and further add to it. In particular, Defendant's first supplemental response to its answer to Interrogatory No. 12 reads as follows:

> Defendant incorporates the foregoing answer and further states as follows:
>
> Since at least as early as March 8, 2022, Defendant's FORMA products have been promoted, provided, or sold in the following US States: Alabama, Arizona, Arkansas, California, Colorado, Connecticut, Delaware, Florida, Georgia, Hawaii, Idaho, Illinois, Indiana, Kansas, Louisiana, Maine, Maryland, Massachusetts, Michigan, Minnesota, Mississippi, Missouri, Nebraska, Nevada, New Jersey, New Mexico, New York, North Carolina, Ohio, Oklahoma, Oregon, Pennsylvania, Rhode Island, South Carolina, Tennessee, Texas, Utah, Vermont, Virginia, Washington, and Wisconsin.
>
> Although Defendant officially rebranded as of March 8, 2022, some use of the FORMA mark occurred prior to that date. For example, as seen in the screenshot below, Defendant's FORMA website was operational prior to March 8, 2022.



> According to Plaintiff, it *"used the Asserted Mark in at least the following geographic areas (at least as early as month year): Texas (September 1, 2018), North Carolina (January 15, 2019), California (July 1, 2019), Arizona (September 1, 2019), Minnesota (February 1, 2020), Indiana (August 30, 2021), Illinois (November 4, 2021), and Pennsylvania (January 24, 2022)."* [Plaintiff's Resp. to Interrogatory No. 2.] Defendant continues to investigate Plaintiff's use and reserves the right to challenge the foregoing. Assuming, however, that Plaintiff's list is accurate, then Defendant has priority over Plaintiff in at least the following states: Alabama, Arkansas, Colorado, Connecticut,

Delaware, Florida, Georgia, Hawaii, Idaho, Kansas, Louisiana, Maine, Maryland, Massachusetts, Michigan, Mississippi, Missouri, Nebraska, Nevada, New Jersey, New Mexico, New York, Ohio, Oklahoma, Oregon, Rhode Island, South Carolina, Tennessee, Utah, Vermont, Virginia, Washington, and Wisconsin.

[D.27-2, pp. 18-21.] To the extent Plaintiff seeks to imply the Defendant's answer and first supplementation thereof contained or did not contain anything that was not expressly set forth therein, this statement is denied.

21. It is admitted that Defendant did not *amend* its First Supplemental Response, as the specific language shown in Paragraph 20 above was not changed. To the extent Plaintiff seeks to imply that Defendant's answer was not *further supplemented*, this statement is denied. Defendant provided a third supplement to its answer that stated:

Defendant incorporates its foregoing answer and further states as follows:

A list of Defendant's customers as of March 2022 may be found at T002226-T002229. Employees of these customers and the customers' locations in March 2022 would have been exposed to Defendant's FORMA branded software at least as early as that time.

Based on the timeline located at T002217-T002221, at least some of Defendant's customers were made aware of the rebrand as early as February 2022

[D.27-2, pp. 18-21.] Thereafter, Defendant provided a fourth supplement to its answer that stated:

Defendant incorporates its foregoing answer. Defendant further notes that testimony regarding this topic was involved in the 30(b)(6) deposition of Twic, Inc. and directs Plaintiff to the same.

Documents that are related to this response have been produced in Defendant's document production. Defendant, in good faith, has attempted to identify responsive documents in its response to this interrogatory. To the extent Defendant inadvertently missed a document that it produced from being listed in this interrogatory response, Defendant reserves the right to use that material to support its case, as the material was timely provided to Plaintiff in the document production.

13

[*Id.*]  All supplementations were timely made before the close of discovery.  [*Id.*]  Plaintiff never objected to Defendant's the content of interrogatory responses as set forth in the final supplementations.

22.     It is admitted that Defendant's initial answer to Interrogatory No. 13 stated as follows:

> Defendant objects to this request to the extent it seeks materials covered by the attorney-client privilege or the work product doctrine. Defendant objects to this request as premature, as Defendant needs to obtain materials from Plaintiff to confirm Plaintiff's prior claims regarding where it used its mark in order to identify the "geographic regions in response to Interrogatory No. 12." Defendant further objects to this request to the extent it seeks confidential information; Defendant will supplement with relevant confidential information after entry of a suitable protective order. Subject to this objection, Defendant states as follows:
>
> On March 8, 2022, Defendant rebranded its software to FORMA. The FORMA name was rolled out simultaneously across all Defendant's channels. Customers and users of Defendant's platform may be found in all 50 states, and would have seen the FORMA name used with Defendant's products and services at that time.
>
> Furthermore, Defendant filed its trademark application as an intent-to-use application. That application was filed on February 15, 2022. Once the USPTO grants Defendant's registration, Defendant's nationwide priority date will be February 15, 2022.  Defendant will further supplement this response if and when Plaintiff produces evidence to confirm the locations where Plaintiff claimed to have made common law use of FORMA.AI in the United States.

[D.27-2, pp. 21-25.]  It is admitted that Defendant's first supplementation to its answer to Interrogatory No. 13 stated as follows:

> Defendant incorporates its foregoing answer and further states as follows:
>
> From March 1, 2022 through June 30, 2023, Defendant spent $620,000 on marketing and advertising. An additional $331,000 was spent on meetings and conferences, at which Defendant's services were promoted. Furthermore, Defendant spent $124,000 on "company swag," which bears Defendant's mark.

[*Id.*]  It is admitted that Defendant's second supplementation to its answer to Interrogatory No. 13 stated as follows:

> Defendant incorporates its foregoing answer and further states as follows:

14

For March 2022, the only month prior to April 1, 2022 in which Defendant used its mark, Defendant made $646,597 in revenue and spent $1,170,762 in advertising and marketing. Defendant does not maintain financial records based on geographic region. In March of 2022, Defendant had approximately 126 customers.

Defendant's customers are businesses. At least some of the customer-businesses have multiple offices with employees in numerous states (see, e.g., Lululemon). Other businesses offer remote working opportunities that allow their employees to live and work in any state (see, e.g. Dropbox). As a result, Defendant's FORMA software was provided to employees of Defendant's customers in many states. In particular, in March 2022, there were employees of Defendant's customers located in at least: Alabama, Arizona, Arkansas, California, Colorado, Connecticut, Delaware, Florida, Georgia, Hawaii, Idaho, Illinois, Indiana, Kansas, Louisiana, Maine, Maryland, Massachusetts, Michigan, Minnesota, Mississippi, Missouri, Nebraska, Nevada, New Jersey, New Mexico, New York, North Carolina, Ohio, Oklahoma, Oregon, Pennsylvania, Rhode Island, South Carolina, Tennessee, Texas, Utah, Vermont, Virginia, Washington, and Wisconsin. These employees would be exposed to the FORMA name through communications informing them of the brand update, through changes on Defendant's website, and through Defendant's software itself. Examples of the materials sent to Defendant's customers and their employees may be found throughout Defendant's document production.

[*Id.*] To the extent Plaintiff seeks to imply Defendant's answer, first supplementation, and second supplementation contained or did not contain anything that was not expressly set forth therein, this statement is denied. To the extent Plaintiff seeks to imply that Defendant's answer to Interrogatory No. 13 was not further supplemented, the same is denied. Defendant provided a third supplement to its answer to Interrogatory No. 13, which reads as follows:

Defendant incorporates its foregoing answer and further states as follows:

A list of Defendant's customers as of March 2022 may be found at T002226-T002229. Employees of these customers and the customers' locations in March 2022 would have been exposed to Defendant's FORMA branded software at least as early as that time.

A review of the Wayback Machine's archive of the joinforma.com website indicates that Defendant's FORMA website was operational prior to March 8, 2022.



Additionally, based on the timeline located at T002217-T002221, at least some of Defendant's customers were made aware of the rebrand as early as February 2022. Information about these efforts may be found at T002222-T002237.

[*Id.*] Defendant provided a fourth supplement to its answer to Interrogatory No. 13, which reads as follows:

> Defendant incorporates its foregoing answer. Defendant further notes that testimony regarding this topic was involved in the 30(b)(6) deposition of Twic, Inc. and directs Plaintiff to the same.
>
> Documents that are related to this response have been produced in Defendant's document production. Defendant, in good faith, has attempted to identify responsive documents in its response to this interrogatory. To the extent Defendant inadvertently missed a document that it produced from being listed in this interrogatory response, Defendant reserves the right to use that material to support its case, as the material was timely provided to Plaintiff in the document production.

All supplementations were timely made before the close of discovery. [*Id.*] Plaintiff never objected to Defendant's the content of interrogatory responses as set forth in the final supplementations. Defendant denies that Defendant's use of FORMA infringes any trademark rights of any other party. Plaintiff has not provided evidence of any ruling of infringement from any court or tribunal.

23.     Admitted.

16

24.     Admitted.

25.     This statement is admitted in regards to Mr. Fan's responses to Plaintiff's questions at deposition regarding Defendant's ability to claim priority as of the date of the deposition. To the extent Plaintiff suggests that Twic is asserting it could not assert priority over FormaAI *in the future*, this allegation is denied. Defendant specifically identified in its discovery responses:

> Furthermore, Defendant filed its trademark application as an intent-to-use application. That application was filed on February 15, 2022. Once the USPTO grants Defendant's registration, Defendant's nationwide priority date will be February 15, 2022.

[D.27-2, pp. 18, 22.] Plaintiff concedes that Defendant has a pending trademark application for Defendant's FORMA logo (App. Serial No. 97/268559). [D.26, ¶¶ 19, 39-41.] Plaintiff has not suggested that 15 U.S.C. § 1057(c) is not good law or does not apply to Defendant's pending application for its FORMA logo.

26.     This statement is admitted in regards to Mr. Fan's responses to Plaintiff's questions at deposition regarding Defendant's ability to claim priority as of the date of the deposition. To the extent Plaintiff suggests that Twic is asserting it could not assert priority over FormaAI *in the future*, this allegation is denied. Defendant specifically identified in its discovery responses:

> Furthermore, Defendant filed its trademark application as an intent-to-use application. That application was filed on February 15, 2022. Once the USPTO grants Defendant's registration, Defendant's nationwide priority date will be February 15, 2022.

[D.27-2, pp.18, 22.] Plaintiff concedes that Defendant has a pending trademark application for Defendant's FORMA logo (App. Serial No. 97/268559). [D.26, ¶¶ 19, 39-41.] Plaintiff has not suggested that 15 U.S.C. § 1057(c) is not good law or does not apply to Defendant's pending application for its FORMA logo.

17

27.     This statement is admitted in regards to Mr. Fan's responses to Plaintiff's questions at deposition regarding Defendant's ability to claim priority as of the date of the deposition.  To the extent Plaintiff suggests that Twic is asserting it could not assert priority over FormaAI *in the future*, this allegation is denied.  Defendant specifically identified in its discovery responses:

> Furthermore, Defendant filed its trademark application as an intent-to-use application.  That application was filed on February 15, 2022.  Once the USPTO grants Defendant's registration, Defendant's nationwide priority date will be February 15, 2022.

[D.27-2, pp. 18, 22.]  Plaintiff concedes that Defendant has a pending trademark application for Defendant's FORMA logo (App. Serial No. 97/268559).  [D.26, ¶¶ 19, 39-41.]  Plaintiff has not suggested that 15 U.S.C. § 1057(c) is not good law or does not apply to Defendant's pending application for its FORMA logo.

28.     This statement is admitted in regards to Mr. Fan's responses to Plaintiff's questions at deposition regarding Defendant's ability to claim priority as of the date of the deposition.  To the extent Plaintiff suggests that Twic is asserting it could not assert priority over FormaAI *in the future*, this allegation is denied.  Defendant specifically identified in its discovery responses:

> Furthermore, Defendant filed its trademark application as an intent-to-use application.  That application was filed on February 15, 2022.  Once the USPTO grants Defendant's registration, Defendant's nationwide priority date will be February 15, 2022.

[D.27-2, pp. 18, 22.]  Plaintiff concedes that Defendant has a pending trademark application for Defendant's FORMA logo (App. Serial No. 97/268559).  [D.26, ¶¶ 19, 39-41.]  Plaintiff has not suggested that 15 U.S.C. § 1057(c) is not good law or does not apply to Defendant's pending application for its FORMA logo.

29.     It is admitted that Mr. Fan testified that Defendant attempted to completely and fully respond to the interrogatory responses.  To the extent Plaintiff's statement suggests that Mr.

18

Fan or Defendant waived their right to supplement under Rule 26, such a suggestion is denied. Plaintiff provided no evidence of any waiver. To the extent Plaintiff seeks to imply that Defendant's discovery responses were not later supplemented or that Defendant cannot rely upon such later supplementation, the statement is denied. Defendant's final supplementation was timely served prior to the end of discovery on June 27, 2024. Every interrogatory response was supplemented in the final supplementation. All supplementations were timely made before the close of discovery. Plaintiff never objected to Defendant's the content of interrogatory responses as set forth in the final supplementations. [D.27-2.]

30.     It is admitted that Defendant does not maintain financial records on a geographic basis that show how much revenue it gained or how much it spent on advertising and marketing per geographic region/state during a given period of time. To the extent that this allegation suggests that there is no way to determine the revenue from any particular customer, this allegation is denied. Defendant produced copies of its agreements with its customers, which include, among other things, the customer's location and the cost for Defendant's services. [See, e.g., 2d Lucas Decl., Ex. M.]

31.     It is admitted that Deposition Exhibit 23 does not expressly identify the locations of the customers listed thereon. To the extent this allegation suggests Defendant did not provide *any* information regarding its customers' locations, it is denied. Defendant produced copies of its agreements with its customers in discovery. These agreements include the business location of the customer. [See, e.g. 2d Lucas Decl., Ex. M.] Further, in supplementing the interrogatories after the deposition, Defendant offered to provide information about the location of each office of its customers based on publicly available information if Plaintiff so requested. [2d Lucas Decl., Ex. N.] Plaintiff did not respond to that offer or otherwise indicate Plaintiff needed the

same. Defendant therefore understood that Plaintiff had the information from the documents produced and from publicly available sources.

32.     It is admitted that Deposition Exhibit 23 does not expressly identify the locations of the customers listed thereon. Except as admitted, this allegation misrepresents Mr. Fan's testimony as well as the material produced in response to Plaintiff's discovery requests to Defendant and communications between the parties about the same. Mr. Fan testified that Deposition Exhibit 23 and the responses to Interrogatory Nos. 12 and 13 (as of the time of the deposition) did not include a list of each specific customer's business location. [Fan Depo., pp. 143-144;D.27-5.] Defendant produced copies of its agreements with its customers in discovery. These agreements include the business location of the customer. [See, e.g., 2d Lucas Decl., Ex. M.] Further, in supplementing the interrogatories *after* the deposition, Defendant offered to provide information about the location of each office of its customers based on publicly available information if Plaintiff so requested. [2d Lucas Decl., Ex. N.] Plaintiff did not respond to that offer or otherwise indicate Plaintiff needed the same. Defendant therefore understood that Plaintiff had the information from the documents produced and from publicly available sources.

33.     This allegation misrepresents Mr. Fan's testimony and therefore is denied. Mr. Fan's testimony at deposition included Mr. Fan identifying a list of the customers Defendant had before the rebrand in March 2022. In discussing Deposition Exhibit 23, the following testimony occurred:

> Q: As [we were] going to break, after we talked about this [Exhibit 23], you had noted something on this document that told you about the date. Could you identify that on the record?
>
> A: Yes. So after reviewing the document, I was reminded that this document in particular was generate at a minimum before February 15th. This is again an internal preparation document that our team was using to understand which customers we need to inform [about the rebrand], which ones we had already informed, and there was a line on

> -- down in the middle on the first page that indicates the status is 'will share on February 15th call.' That tells us the document was generated before this date.

[Fan Depo., p. 174; D.27-5.] Mr. Fan also testified at deposition regarding Deposition Exhibit 22; this exhibit expressly includes the number of companies that were Defendant's customers as of each month listed thereon. [Fan Depo., p. 156 and Ex. 22.] To the extent this allegation suggests Defendant's customers did not know of the rebrand prior to the occurrence of the rebrand, not only is this suggestion disproven by Mr. Fan's testimony as set forth herein, it is also contradicted by Ms. Collins' testimony and the exhibits to her declaration showing the materials sent to Defendant's customers ahead of the rebrand. [D.30-3, ¶¶ 5-7 and Ex. A.]

34. It is admitted that Deposition Exhibit 51 is a chart Defendant prepared showing states where its customers or employees of its customers were located.

35. It is admitted that Deposition Exhibit 51 is a chart Defendant prepared showing states where it has customers and the populations of those states, and that this document is not a list of Defendant's customers at the date of the rebrand or at the date Plaintiff filed its application to register Serial No. 97/342791 or received the registration for the same. To the extent Plaintiff suggests that Defendant did not produce evidence about its customers as of the date of the rebrand, Defendant denies such suggestion. These materials were included in Defendant's document production and compiling the information from them is as easy for Plaintiff as it is for Defendant. [*See, e.g.,* D.27-5 (listing the names of Defendant's customers prior to February 15, 2022).]

36. It is admitted that Deposition Exhibit 51 is a chart Defendant prepared showing states where it has customers and the populations of those states, but that this document is not a financial document and does not include sales volume. To the extent Plaintiff suggests that Defendant did not produce any documentation about its sales, Defendant denies such suggestion.

21

[*See, e.g.*, D.27-2, pp. 25-26 (Defendant responding to Plaintiff interrogatory regarding revenues and citing to documents produced by Defendant regarding same).]

37.     It is admitted that Deposition Exhibit 51 includes population values for the states Defendant has customers.

38.     It is admitted that Defendant did not provide evidence that any particular advertisement placed by Defendant directly resulted in a sale, as Defendant's sales are predominantly made through third party benefits brokers who present Defendant's services to the companies who are clients of the brokers.

39.     It is admitted that Defendant's application to register its FORMA logo mark (App. Serial No. 97/268559), shown below, is currently pending and therefore has not yet registered.



40.      It is admitted that Plaintiff filed a Notice of Opposition to Defendant's application to register its FORMA logo mark (App. Serial No. 97/268559).

41.     It is admitted that the opposition related to Defendant's application to register its FORMA logo mark (App. Serial No. 97/268559) has been stayed pending the outcome of this lawsuit, and that Defendant did not oppose Plaintiff's request to stay that opposition.

Defendant sets for the following additional statements of fact:

42.     Plaintiff asserted in its interrogatory responses that it has ▮▮▮▮▮▮▮▮ in the United States.  [D.37, ¶ 45.]  Plaintiff's list includes ▮▮▮▮▮▮▮▮▮▮ who Plaintiff purports contracted with Plaintiff prior to April 1, 2022.  [*Id.*]

43.    The customer listed in Plaintiff's list of alleged US customers of Plaintiff include

███████████████████████████████. [D.37, ¶ 45; 2d Lucas Decl., Ex. E.]

44.    The customers listed in Plaintiff's list of alleged US customers of Plaintiff include

███████████████████████████████████████████████████████████████

███████████████. [2d Lucas Decl., Ex. L.]

Respectfully submitted, this the 6th day of September, 2024.

**Michael Best & Friedrich, LLP**
**Attorneys for Defendant**

By:     _/s/ Emily M. Haas_____
        Emily M. Haas
        NC State Bar No. 39716
        4509 Creedmoor Road, Suite 501
        Raleigh, NC 27612
        Telephone: (984) 220-8745
        Facsimile:  (877) 389-5240
        Email: emhaas@michaelbest.com

## CERTIFICATE OF SERVICE

I hereby certify that on this the 6th day of September, 2024 a true copy of the foregoing **DEFENDANT'S RESPONSE TO PLAINTIFF'S STATEMENT OF MATERIAL FACTS** was filed with the clerk of court using the CM/ECF system, which will send notification by electronic mail of such filing to all counsel of record.

By:     */s/ Emily M. Haas*
          Emily M. Haas
          NC State Bar No. 39,716
          4509 Creedmoor Road, Suite 501
          Raleigh, North Carolina 27612
          Telephone: (984) 220-8750
          Facsimile: (877) 398-5240
          Email: emhaas@michaelbest.com

          *Attorney for Twic, Inc.*