# THE UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF NORTH CAROLINA
# WESTERN DIVISION
# Case No: 4:23-CV-00077-BO

| | |
|---|---|
| FORMA AI INC., ) | |
| ) | |
| Plaintiff, ) | |
| ) | **DEFENDANT'S REPLY TO** |
| v. ) | **PLAINTIFF'S ADDITIONAL** |
| ) | **STATEMENT OF MATERIAL** |
| TWIC, INC., ) | **FACTS** |
| ) | |
| Defendant. ) | |

Pursuant to Local Civil Rule 56.1, Defendant Twic, Inc. submits this Reply Statement to Plaintiff Forma AI Inc.'s additional material facts referenced in the statement submitted by Plaintiff in opposing summary judgment. Defendant responds to Plaintiff's Statement of Material Facts as follows:

106. It is admitted that Docket Entry 6-2 is a copy of Plaintiff's registration certificate, and the registration certificate recites a date of first use in commerce anywhere in the United States of September 2018. It is admitted that the registration certificate recites the following goods and services as covered by the registration:

> In Class 35: Business consultation services, namely, sales performance consultation in the field of reporting, modeling, analyzing, and improving programs for sales compensation, segmentation, sales territory design, quota management, revenue productivity, and benchmarking; Business collaboration services, namely, fostering knowledge sharing in the fields of sales performance management, sales compensation management, and technology selection
>
> In Class 42: Software as a service (SAAS) services featuring software for sales performance and compensation management.

[D.6-2.] Except as admitted, denied. Plaintiff has not submitted competent evidence in support of the denied portions of this statement. The only evidence Plaintiff cites in support of this paragraph is its registration certificate. The registration certificate does not state that Plaintiff

provides an "HR technology platform," and Plaintiff cites no other evidence for this statement. An unsupported assertion is not an admissible fact. Further, a citation to the date of first use of a mark in commerce in a registration certificate is limited to showing "the date of first use in commerce is the date when the goods were first sold or transported, or the services were first rendered, under the mark in a type of commerce that may be lawfully regulated by the U.S. Congress." T.M.E.P. § 903.02. It does not provide evidence of nationwide use as of that date or continuous use since that date. Plaintiff similarly failed to cite evidence showing where specifically it was using the mark or evidence to show Plaintiff continuously used the mark from 2018 to the present. An unsupported assertion is not an admissible statement of fact. The facts admitted to herein are not in question. The unsupported assertions are not admissible facts. There is no question of material fact arising from this Paragraph.

107. Defendant admits that Plaintiff provides technology for the compensation of sales professionals to companies with more than 500 employees, sales teams over 100 individuals, and/or growth rates higher than 20% per year. Except as admitted, denied. Plaintiff has not submitted competent evidence in support of the denied portions of this statement. To the extent the use of "platform" refers to the platform identified in Number 106, Defendant denies that Plaintiff's software platform is an HR technology platform. The only evidence Plaintiff cites in support of its assertions is the *Second Declaration of Michael Buchanan*, D.49-41, hereinafter "Buchanan Declaration." In particular, the only evidence Plaintiff cites in support of its assertions is a conclusory sentence in the Buchanan Declaration. [D.49-41, ¶4.] The conclusory sentence cites no evidence or foundation to support Plaintiff's assertion. Plaintiff failed to cite competent evidence that its software platform is an "HR technology platform."

108. Defendant denies this paragraph. The paragraph is confusing and does not provide any facts as to what comprises the allegedly niche market Plaintiff mentions. Plaintiff has not submitted competent evidence in support of this statement. Plaintiff cites to a single, conclusory statement in the Buchanan Declaration that reads, "To the contrary, Plaintiff has an niche and narrow market of relevant or potential customers based on the employee count, degree of growth, and type of compensation human resource departments elect to retain and incentivize talent." [D.49-41, ¶12.] Nothing in this paragraph provides any details or facts about an existing "niche market" or the contours thereof.

109. Defendant denies that Plaintiff currently has ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮. Although Plaintiff asserted in its interrogatory responses ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮. [D.44, ¶8.] Plaintiff relies upon testimony from Mr. Buchanan for this assertion. Mr. Buchanan does not identify any supporting evidence for his conclusory assertion. Further, as set forth by the evidence cited at D.44, ¶8, the documentary evidence produced by Plaintiff contradicts Mr. Buchanan's testimony. Upon information and belief, Defendant admits that Plaintiff's current customers are large, multinational companies.

110. Defendant denies this paragraph. Plaintiff has not submitted competent evidence in support of this statement. The only citation for this paragraph provided by Plaintiff is an unsupported conclusory statement in the Buchanan Declaration. [D.49-41, ¶13.] Plaintiff provided no facts to demonstrate that ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ Plaintiff further did not produce any evidence in discovery

3

regarding this assertion, and, even if it was an admissible fact, which it is not, the failure to timely produce the information in discovery bars its admissibility.

111. Defendant understands that this paragraph is a statement of opinion by Mr. Buchanan. To the extent Plaintiff asserts this paragraph is a statement of fact, Defendant denies the same. Plaintiff has not submitted competent evidence in support of this statement. The only citation provided by Plaintiff is to a conclusory, unsupported statement in the Buchanan Declaration. [D.49-41, ¶15.]

112. Defendant understands that this paragraph is a statement of opinion by Mr. Buchanan. To the extent Plaintiff asserts this paragraph is a statement of fact, Defendant denies the same. Plaintiff has not submitted competent evidence in support of this statement. The only citation provided by Plaintiff is to a conclusory, unsupported statement in the Buchanan Declaration. [D.49-41, ¶16.]

113. Defendant understands that this paragraph is a statement of opinion by Mr. Buchanan. To the extent Plaintiff asserts this paragraph is a statement of fact, Defendant denies the same. Plaintiff has not submitted competent evidence in support of this statement. The only citation provided by Plaintiff is to a conclusory, unsupported statement in the Buchanan Declaration. [D.49-41, ¶14.]

114. Defendant denies this paragraph for failure to cite admissible evidence. Plaintiff relies upon its own deposition for this statement. [D.49-42.] The deposition is not provided to impeach or provide context to an excerpt from this deposition submitted by Defendant, but rather to set forth an entirely new alleged fact. The deposition, therefore, is inadmissible. The deposition testimony at issue was provided by Mr. Buchanan, who submitted two declarations thus far. Plaintiff, however, failed to cite to any statement from either of Mr. Buchanan's

4

declarations to support this claim. Plaintiff failed to submit admissible evidence to support this claim.

115. It is admitted that Mr. Fan testified at Deposition Page 58, line 14- through Deposition Page 60, line 19, as follows:

> Q. Response to Interrogatory 10 right at the next 15 sentence lists some, I guess, types of industries, and it says, "Defendant's customers are in the Information Technology, Retail and Hospitality, Business Services, Healthcare Services, and Financial Services industries." Do you see that?
>
> A. Yes.
>
> Q. Is that an exhaustive list of the industries that Twic's customers are in?
>
> A. No.
>
> Q. So these are exemplary, not meant to be exhaustive?
>
> A. Yes.
>
> Q. And then in the following paragraph Twic identifies a number of customers; is that correct?
>
> A. Yes.
>
> Q. Let me ask you this: Is there -- is there any business that employs at least 200 people that would not be a potential target customer for Twic?
>
> A. I'm sorry. Can you repeat that one more time?
>
> Q. Is there any business, is there any company that employs at least 200 people that would not be a potential target customer of Twic?
>
> A. Not yet, but we do know that, for example, education institutions, government agencies would not be a good type of customer for us at the moment, not to say that we will never approach these industries, but these are two examples that we would steer clear from right now.
>
> Q. Government institutions and --
>
> A. Education.
>
> Q. -- education. Are there any other industries or types of customers, I mean, when I'm speaking businesses, that employ in excess of 200 people that Twic would steer clear of?

5

A. Not besides those two.

Q. Okay. So, for example, Nike would be a potential target customer of Twic; is that right?

A. Yes.

Q. Would Uber be a potential target customer?

A. Yes.

Q. Would Open Table be a potential customer?

A. Yes.

Q. Would LinkedIn be a potential customer?

A. Yes.

Q. Would Career Builder be a potential customer?

A. Yes.

Q. Would Yelp be a potential customer?

A. They are a current customer.

Q. Okay. Would Trust Pilot be a potential customer?

A. Yes.

Q. Would Ford Motor Company be a potential customer?

A. Yes.

Q. Would 3M be a potential customer?

A. Yes.

[D.49-51, p. 59-61.] To the extent Plaintiff seeks to imply Defendant's testimony at deposition contained or did not contain anything that was not expressly set forth therein, this statement is denied. There is no question of fact as to the contents of Mr. Fan's testimony, as the entire transcript of that testimony was submitted to the Court. [D.49-51.] How a party characterizes statements from a deposition and/or the failure to provide the context of deposition testimony

does not amount to a question of material fact when the actual transcript is available and can be consulted. It is admitted that Mr. Buchanan's declaration states, "███████████████████████████████████████████████████████████████████████████████████████████████████" [D.49-41, ¶30.] A statement made "upon information and belief" is not a fact. Plaintiff provided no facts to demonstrate that its entire universe of potential customers are also potential customers of Defendant."

116. Defendant denies this paragraph. Plaintiff has not submitted competent evidence in support of this statement. The only citation for this paragraph provided by Plaintiff are to unsupported conclusory statements in the Buchanan Declaration. [D.49-41, ¶33-37.] Plaintiff provided no facts to demonstrate that it works with employee benefits brokers, that it targets the same employee benefits professionals as Defendant, that 10-15% of Plaintiff's customers come from employee benefits broker referrals, and/or that Plaintiff received referrals through its forma.ai website from brokers. Plaintiff further did not produce any evidence in discovery regarding these assertions. The failure to timely produce this information in discovery bars its admissibility into evidence.

117. It is admitted that Plaintiff's Sixth Supplemental Response to Defendant's Interrogatories identifies 29 instances Plaintiff alleges are actual confusion in response to Interrogatory No. 8.

118. Defendant denies this paragraph for failure to cite admissible evidence. Appx. Ex. V., D.49-61, is an email between a Care.com employee and Plaintiff. To the extent Plaintiff seeks to provide this email for the truth of the matter asserted therein, it amounts to inadmissible hearsay. No other evidence was cited by Plaintiff in support of this paragraph.

7

119. Defendant denies this paragraph in its entirety. Plaintiff failed to provide any admissible evidence to support this paragraph. Defendant cites to paragraphs 79-80 of the Buchanan Declaration. Those paragraphs solely consist of Mr. Buchanan stating what Mr. Luo allegedly said. These paragraphs are inadmissible hearsay as they are third party statements submitted for the truth of the matter asserted. Plaintiff failed to provide any admissible statement from Mr. Luo, such as, for example, a declaration.

120. Defendant denies this paragraph in its entirety. Plaintiff's support for this statement is Plaintiff's speculation. Plaintiff provided no facts to support that there are other occurrences that could be instances of confusion, as Plaintiff failed to identify the same.

121. It is admitted that Mr. Fan testified at Deposition Page 141, line 4 through Deposition Page 143, line 8 as follows:

> Q. Okay. So this was -- This was necessarily a list of all customers who had signed their contracts prior to the re-brand; correct?
>
> A. That's right.
>
> Q. So none of the customers on this list would have made a purchasing decision to buy Twic's products after the re-brand; correct?
>
> A. One second. I don't know, but let me clarify. The -- If you see Column 3, "Aware of Twic Re-brand" --
>
> Q. Uh-huh.
>
> A. -- the ones that are marked "No," there were customers already at the point of March 8th for the re-brand launch. So your statement would be true they did not make the purchasing decision knowing that we were re-branding to the new name. I don't know exactly how many there is, but the ones that are marked in "Yes," some of them may have. And this is because when we knew that the new brand was coming, and we were in negotiation and the contracting phase with the customers, we informed them that there is a new name that may be coming, and we don't want them to very quickly after the re-brand after they launched having to receive the news very quickly that there is a new name that we are switching into. That is why you see some of the "Yeses" in Column 3. That is our internal document letting ourselves know the people who were aware of the re-brand prior to March 8th, the date, versus the ones that are not. But at this point, I do

> not know which one of them made the actual purchasing decision knowing the Forma name was coming.
>
> Q. So let me try and summarize that.
>
> A. Yes.
>
> Q. Anyone who has a "No" in the third column would have made their purchasing decision before any Forma re-brand; correct?
>
> A. That's right.
>
> Q. For ones that have a "Yes" in the third column, they may have made their purchasing decision knowing about the Forma re-brand or they may not have, we don't know; correct?
>
> A. That's right.
>
> Q. So what this list identifies is a number of customers who made their purchasing decisions prior to the Forma re-brand; correct?
>
> A. Yes.
>
> Q. And then it identifies a fewer number of customers who may or may not have made their purchasing decision prior to the re-brand; correct?
>
> A. That's right.
>
> Q. And the full, complete, and accurate answer to Interrogatories Number 12 and 13 doesn't tell us whether any of these customers actually did make a purchasing decision knowing of the Forma re-brand; correct?
>
> A. That's right.

[D.49-51, pp. 142-144.] To the extent Plaintiff seeks to imply Defendant's testimony at deposition contained or did not contain anything that was not expressly set forth therein, this statement is denied. There is no question of fact as to the contents of Mr. Fan's testimony, as the entire transcript of that testimony was submitted to the Court. [D.49-51.] How a party characterizes statements from a deposition and/or the failure to provide the context of deposition testimony does not amount to a question of material fact when the actual transcript is available and can be consulted.

122. It is admitted that Mr. Fan testified at Deposition Page 90, lines 17-24, as follows:

Mr. Fan: And so once that's [the new name and direction of the brand] been determined, we worked n the actual launch plan itself of t he new brand. That includes a PR campaign that was many months in the works. That includes customer communication campaign, member communication campaign, the broker communications that goes out to the market, and that all added up to the eventual launch of the new brand, the new website, the new name for everyone in March of 2022.

[D.49-51, p. 91.] It is admitted that Mr. Fan testified at Deposition Page 94, lines 1-8 as follows:

Mr. Fan: On the marketing team to get the – to get the new brand and the new website out there, there are also, of course, internal resources that was not exactly money we spent, but internal resources time that we spent to craft customer communication, member communication, refreshing our internal brand, our member portal. It was – it was a very big effort for us internally. I may have missed a couple items but those were the more important ones.

[D.49-51, p. 95.] To the extent Plaintiff seeks to imply Defendant's testimony at deposition contained or did not contain anything that was not expressly set forth therein, this statement is denied. There is no question of fact as to the contents of Mr. Fan's testimony, as the entire transcript of that testimony was submitted to the Court. [D.49-51.] How a party characterizes statements from a deposition and/or the failure to provide the context of deposition testimony does not amount to a question of material fact when the actual transcript is available and can be consulted.

123. It is admitted that Defendant's website includes a button through which a user of Defendant's website may contact Defendant. It is admitted that Plaintiff's website has a button through which a user of Plaintiff's website may contact Plaintiff. It is admitted that Mr. Fan testified at Deposition Page 36, line 4 through Deposition Page 37, line 8:

Q. Do customers ever reach out to Twic affirmatively, prospective customers?

A. Sometimes. Sometimes they could come to conferences sometimes. But the vast majority of the time, the way that we seek customer data, it usually comes from multiple different. Sometime they would submit a request on our website. Sometimes they would reach out to us through – reach us through conferences. Sometimes they would join our webinars. But the thing – the data we see behind the scene ultimately the brokers are still

10

involved one way or the other, and they just get brought in sometimes earlier in the process than later in the process. That's why the number is somewhere around 70 to 90 percent. The broker – the broker does have a lot of influence in our industry.

Q. So what you are saying is that a customer may reach out to you through your website, but eventually a broker gets involved?

A. It happens frequently, yes.

Q. So how does a customer reach out to you through your website?

A. There is a form on the website that allows them to submit their information.

Q. What does Twic do – What does Twic do when it gets that request or that form?

A. It gets directly routed to our sales team; and depending on the account assignment, one of the sales reps would reach out.

[D.49-51, pp. 37-38.] To the extent Plaintiff seeks to imply Defendant's testimony at deposition contained or did not contain anything that was not expressly set forth therein, this statement is denied. Specifically, there is nothing in Mr. Fan's testimony that the button linked to the request form is itself used "to attract" new customers, as opposed to simply functioning as a link to direct website users to a form should they desire to seek further information after reviewing Defendant's website. There is no question of fact as to the contents of Mr. Fan's testimony, as the entire transcript of that testimony was submitted to the Court. [D.49-51.] How a party characterizes statements from a deposition and/or the failure to provide the context of deposition testimony does not amount to a question of material fact when the actual transcript is available and can be consulted.

124. It is admitted that Mr. Fan testified at Deposition Page 37, lines 9 through 15:

Q. Now how many requests through the website come in, in a year to Twic?

A. I think about the best estimate on average one to two a day, so that would equate to 300 to 700 a year.

Q. And do you have an idea, a percentage of those requests that materialize ultimately into a Twic customer?

A. I don't know that.

[D.49-51, p. 38.] To the extent Plaintiff seeks to imply Defendant's testimony at deposition contained or did not contain anything that was not expressly set forth therein, this statement is denied. Specifically, there is nothing in Mr. Fan's testimony that the request form is used "to attract" new customers. There is no question of fact as to the contents of Mr. Fan's testimony, as the entire transcript of that testimony was submitted to the Court. [D.49-51.] How a party characterizes statements from a deposition and/or the failure to provide the context of deposition testimony does not amount to a question of material fact when the actual transcript is available and can be consulted.

 125. It is admitted that Defendant and Plaintiff attend trade shows and industry conferences. It is admitted that, at deposition, Mr. Fan testified on Deposition Page 39, line 23 through Deposition Page 41, line 5 as follows:

> Q. You also mentioned that customers might come to Twic by or through an encounter at a conference; is that correct?
>
> A. Yes.
>
> Q. Tell me how that works.
>
> A. So under our marketing programs, we would sometimes show up at industry conferences usually related to employee benefits. We would send people and also materials to the conference, and we would create a booth usually. That includes, you know, tables, branding, fliers, swag. Sometimes there will be speaking engagements on stage depending on, you know, the package that we purchase from the conference.
>
> And we would – our team would sponsor the conference attendees, usually benefits professionals, and some of them could convert into leads later on.
>
> Q. The attendees, when you say they are benefits professional, are these people that work at brokers or people that work at the ultimate customer virtually?
>
> A. Usually both.
>
> Q. You said that Twic might give presentations or speeches at these conferences?
>
> A. Yes.

> Q. How frequently does that happen where Twic gives a presentation or a speech at one of these conferences?
>
> A. Usually two or three of these events a year.
>
> Q. Does Twic – Excuse me. Does Twic track how many leads are generated from participation in these conferences?
>
> A. Yes. Usually depends. Some conferences would give us tools to track booth traffic. Some conference would not. In which case, we try our best to note down people's names.

[D.49-51, pp. 40-42.] To the extent Plaintiff seeks to imply Defendant's testimony at deposition contained or did not contain anything that was not expressly set forth therein, this statement is denied. There is no question of fact as to the contents of Mr. Fan's testimony, as the entire transcript of that testimony was submitted to the Court. [D.49-51.] How a party characterizes statements from a deposition and/or the failure to provide the context of deposition testimony does not amount to a question of material fact when the actual transcript is available and can be consulted. Defendant further denies Plaintiff's assertions regarding trade shows Plaintiff attends to the extent Plaintiff seeks to imply Defendant and Plaintiff attend the same trade shows. Plaintiff has not submitted competent evidence in support of this statement. The only citations for this paragraph as it relates to Plaintiff's activities as provided by Plaintiff are unsupported conclusory statements in the Buchanan Declaration. [D.49-41, ¶38-39.]

126. It is admitted that Plaintiff has claimed during this suit that Exhibits I-III, VIII-XV, and XXX-XXXIX to Exhibit A are instances of confusion. Defendant disputes that these are instances of confusion. Plaintiff failed to produce any admissible evidence regarding any of these alleged instances. Plaintiff provided no testimony from any of the parties Plaintiff asserts are confused. Instead, Plaintiff submits copies of communications with these parties, which amount to inadmissible hearsay. With regard to Exhibit V, prior to September 6, 2024, Plaintiff did not assert that this communication was an instance of confusion. Plaintiff's new assertion

regarding this exhibit being confusion is untimely, violates the civil rules, and should be excluded. Exhibits N, Y, and Z are not properly authenticated and therefore cannot amount to admissible evidence. These appear to be exhibits from the deposition of Jason Fan. Mr. Fan is neither the sender nor the recipient of these communications and therefore cannot provide competent testimony as to the authenticity of the same. Plaintiff provided no other authentication attempt for these items. This paragraph is explicitly denied with regard to all inadmissible evidence.

      127.    It is admitted that the Fan Deposition at Deposition Page 86, line 23 through Deposition Page 87, line 17 reads as follows:

> Q: Out of the total benefits spend for a Twic customer, what percentage of t hat total benefit spend is spent on Twic's products, if you know?
>
> A: The – you are referring to the actual [software] subscription cost?
>
> Q: Yes.
>
> A: Okay. Very little. Usually in the benefits industry, their – their budget pull is really sizable. If we factor in, for example, people's medical plan, dental, vision, 401(k), ancillary programs, pretax programs, LSA programs that we do, and sometimes a variety of others, then a typical benchmark would be in the thousands per employee per month.
>
> So, relatively speaking, we are charging two to four dollars on a monthly basis. That is a very small percentage. The bigger amount is the actual – it's what goes into to fund these programs which would be the money that we manage on behalf of the employer. I just want to emphasize the actual cost to pay for Twic as a software provider is very low percentage-wise.

[D.49-51, pp. 87-88.] To the extent Plaintiff seeks to imply Defendant's testimony at deposition contained or did not contain anything that was not expressly set forth therein, this statement is denied. There is no question of fact as to the contents of Mr. Fan's testimony, as the entire transcript of that testimony was submitted to the Court. [D.49-51.] How a party characterizes statements from a deposition and/or the failure to provide the context of deposition testimony

does not amount to a question of material fact when the actual transcript is available and can be consulted.

128. It is admitted that benefits professionals looking to wisely use their companies' budget for employee benefits spend significant time choose those benefits. It is further admitted that the Fan Deposition at Deposition Page 85, lines 7-11, reads as follows:

> Q: And I believe you said earlier that in the typical situation with a Twic customer, that the benefits team will get a budget from their company for benefits for a year; is that correct?
>
> A: Yes.

[D.49-51, p. 86.] It is also admitted that the Fan Deposition at Deposition Page 87, line 22 through Deposition Page 88, line 2 reads as follows:

> Q: And, for example, for the benefits professional that is deciding to make that payment of $18,000 in this case, that would be a very small percentage of what the benefits professional is ultimately spending on employee benefits; correct?
>
> A: Yes.

[D.49-51, pp. 89-90.] To the extent Plaintiff seeks to imply Defendant's testimony at deposition contained or did not contain anything that was not expressly set forth therein, this statement is denied. To the extent Plaintiff states that Mr. Fan testified "benefits professional would spend more time choosing the costly benefits, like health insurance, and much less time and discernment on the least-costly budget items, like Defendant's services," this allegation is expressly denied. Neither of the sections of Mr. Fan's deposition cited by Plaintiff state "benefits professional would spend more time choosing the costly benefits, like health insurance, and much less time and discernment on the least-costly budget items, like Defendant's services." When read in context, neither of these sections would lead a reasonable person to believe that "benefits professional would spend more time choosing the costly benefits, like health insurance, and much less time and discernment on the least-costly budget items, like Defendant's services."

15

Further, when reading Mr. Fan's declaration in its entirety, Mr. Fan's testimony is opposite to the claim that "benefits professional would spend more time choosing the costly benefits, like health insurance, and much less time and discernment on the least-costly budget items, like Defendant's services." For example, Mr. Fan testified that his company:

- "manage[s] benefits budgets on behalf of the employer. … The way that this works for the employers is that the benefits manager would usually get a budget assigned to them by the finance team on a yearly basis." [D.49-51, p. 45.]

- That while the subscription cost for Defendant's software is a small part of a benefits budget, a "bigger amount is the actual – it's what goes into to fund these programs which would be the money that we manage on behalf of the employer." [D.49-51, p. 88.]

- "The employer would be able to set the amount for each employee. They would be able to set the scope of the program which refers to the categories of spend that is considered eligible under the program. They would put all that information into our system and we would deliver the benefits fund to individual employees across the world.": the benefits budget is "either the second or third largest expense" for a company. [D.49-51, p. 178.]

- That for commercial customers, the customers agree to a standard Master Services Agreement and work to specifically identify and personalize the terms of the order form, which becomes part of the agreement between a commercial customer and Defendant. [D.49-51, pp. 66-67.]

- The order form includes customizable information such as the number of employees that will be using Defendant's services, and what offerings the employer desires to include in the program. [D.49-51, p. 72.]

- The order form may also include the per-employee per month price that the employer agreed to pay for those services, which may or may not be negotiated. [D.49-51, p. 72, 74.] If a company is expecting rapid growth within their employee base, a flat annual cost may also be negotiated. [D.49-51, p. 80.]

The statements identified by Plaintiff, when read in the context of Mr. Fan's deposition testimony as a whole, are inapposite to the idea that a "benefits professional would spend more time choosing the costly benefits, like health insurance, and much less time and discernment on the least-costly budget items, like Defendant's services." Defendant's services allow employees to access to the benefits the employer desires to provide, manage the substantial benefits budgets

16

provided by the employer, and come from detailed discussions about the needs of the employer. [D.49-51, p. 45, 66-67, 72, 80, and 178.] There is no question of fact as to the contents of Mr. Fan's testimony, as the entire transcript of that testimony was submitted to the Court. [D.49-51.] Misconstruing statements from a deposition and/or not providing the context of deposition testimony does not amount to a question of material fact when the actual transcript is available and can be consulted.

129. It is admitted that the Fan Deposition at Deposition Page 48, lines 5-18, reads as follows:

> Mr. Fan: For the enterprise side of the business, it's very common that we negotiate terms on the contract. That would be usually several rounds of back and forth with our prospect's counsel, redlining on things they feel – the terms they feel more comfortable with.
>
> Q: You distinguish between, and correct me if I'm wrong, commercial side and enterprise side.
>
> A: Yes.
>
> Q: Explain that distinction.
>
> A: For our commercial group, we designated as anywhere from roughly 200 employees would be the lower end of the market, all the way to around 3- to 4,000 employees. This corresponds to roughly a deal size of 10,000 a year to about 200,000 a year.

[D.49-51, p. 49.] To the extent Plaintiff seeks to imply Defendant's testimony at deposition contained or did not contain anything that was not expressly set forth therein, this statement is denied. There is no question of fact as to the contents of Mr. Fan's testimony, as the entire transcript of that testimony was submitted to the Court. [D.49-51.] Misconstruing statements from a deposition and/or not providing the context of deposition testimony does not amount to a question of material fact when the actual transcript is available and can be consulted.

Respectfully submitted, this the 20th day of September, 2024.

                **Michael Best & Friedrich, LLP**
                **Attorneys for Defendant**

By:   */s/ Emily M. Haas*
       Emily M. Haas
       NC State Bar No. 39716
       4509 Creedmoor Road, Suite 501
       Raleigh, NC 27612
       Telephone: (984) 220-8745
       Facsimile: (877) 389-5240
       Email: emhaas@michaelbest.com

## CERTIFICATE OF SERVICE

I hereby certify that on this the 20th day of September, 2024 a true copy of the foregoing **DEFENDANT'S REPLY TO PLAINTIFF'S ADDITIONAL STATEMENT OF MATERIAL FACTS** was filed with the clerk of court using the CM/ECF system, which will send notification by electronic mail of such filing to all counsel of record.

By: */s/ Emily M. Haas*
Emily M. Haas
NC State Bar No. 39,716
4509 Creedmoor Road, Suite 501
Raleigh, North Carolina 27612
Telephone: (984) 220-8750
Facsimile: (877) 398-5240
Email: emhaas@michaelbest.com

*Attorney for Twic, Inc.*