IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
EASTERN DIVISION
No. 4:23-cv-00077-BO-BM

|                          |   |           |
|--------------------------|---|-----------|
| FORMA AI INC.,           | ) |           |
|    Plaintiff, | ) |           |
|                          | ) |           |
| v.                       | ) | O R D E R |
|                          | ) |           |
| TWIC, INC.,              | ) |           |
|    Defendant. | ) |           |
|                          | ) |           |

This matter comes before the court on the motion of Plaintiff Forma AI Inc. ("Forma") for summary judgment on the issue of common law priority [DE 24], and the motion of Defendant Twic, Inc. ("Twic") for summary judgment on the issue of likelihood of confusion [DE 29]. Both parties have responded, and the motion is ripe for ruling.

## BACKGROUND

Plaintiff Forma AI Inc. was founded in 2016, and is based in Ontario, Canada. The company provides a software platform that companies can use to manage the compensation and benefits that employees receive for their sales performance. Plaintiff Forma has some business in the United States, and has used in connection with that business the following mark. This mark consists of the capitalized text "FORMA.AI" and a stylized letter "F" created in the negative space between three purple lines.



Defendant Twic, Inc. was founded in 2017 and provides a software platform that companies can use to design and offer employee benefits, such as health insurance. In 2022, Twic

rebranded to "Forma" and filed an intent-to-use application with the U.S. Patent and Trademark Office on February 15, 2022. This allegedly infringing mark consists of the lowercase text "forma" and a stylized graphic consisting of blue, red, pink, and yellow dots.



After becoming aware of Twic's allegedly infringing use of the Forma mark, Plaintiff Forma filed an application with the U.S. PTO on April 1, 2022, claiming a first-use date of September 2018 for their FORMA.AI mark. The FORMA.AI mark was approved and registered on May 9, 2023. Defendant Twic's application has been stayed pending the conclusion of this litigation, and has not been acted upon by the U.S. PTO.

Plaintiff Forma then sent several cease-and-desist letters to Defendant Twic, demanding that Defendant cease using the allegedly infringing mark. Not satisfied with Defendant Twic's response, Plaintiff then brought suit under the Lanham Act for trademark infringement, unfair competition, and false designation of origin, as well as common law and state law claims of unfair competition. Discovery ended in June 2024, and both parties have now moved for summary judgment pursuant to Federal Rule of Civil Procedure 56(a).

## ANALYSIS

A motion for summary judgment may not be granted unless there are no genuine issues of material fact for trial and the movant is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a). The moving party bears the initial burden of demonstrating the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). If that burden has been met, the non-moving party must then come forward and establish the specific material facts in dispute

to survive summary judgment. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 588 (1986). In determining whether a genuine issue of material fact exists for trial, a trial court views the evidence and the inferences in the light most favorable to the nonmoving party. *Scott v. Harris*, 550 U.S. 372, 378 (2007). However, "[t]he mere existence of a scintilla of evidence" in support of the nonmoving party's position is not sufficient to defeat a motion for summary judgment. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 252 (1986). "A dispute is genuine if a reasonable jury could return a verdict for the nonmoving party. A fact is material if it might affect the outcome of the suit under the governing law." *Libertarian Party of Va. v. Judd*, 718 F.3d 308, 313 (4th Cir. 2013) (internal quotation marks and citations omitted). Speculative or conclusory allegations will not suffice. *Thompson v. Potomac Elec. Power Co.*, 312 F.3d 645, 649 (4th Cir. 2002).

When deciding cross-motions for summary judgment, a court considers each motion separately and resolves all factual disputes and competing inferences in the light most favorable to the opposing party. *Rossignol v. Voorhaar*, 316 F.3d 516, 523 (4th Cir. 2003). The court must ask "whether the evidence presents a sufficient disagreement to require submission to the jury or whether it is so one-sided that one party must prevail as a matter of law." *Anderson*, 477 U.S. at 251.

## I. Likelihood of Confusion

Defendant Twic has moved for summary judgment on the issue of whether there is a likelihood of confusion between the marks [DE 29]. If there is no likelihood of confusion or deception, the claims asserted by Plaintiff Forma under the Lanham Act must necessarily fail. *See* 15 U.S.C. § 1125(a)(1)(A) (a necessary element of a Lanham Act claim is that the infringing mark "is likely to cause confusion, or to cause mistake, or to deceive…"); *but see Harty v. Underhill*,

3

710 S.E.2d 327, 332 (N.C. App. 2011) (likelihood of confusion is not a necessary element of an unfair competition claim in North Carolina); *Compound Development LLC v. Smith*, 2025 WL 818588, at *4 (Cal. Super. Ct. 2025) (Cal. Bus. & Prof. Code § 17200 does not necessarily require a likelihood of confusion).

The "likelihood of consumer confusion is an 'inherently factual' issue that depends on the unique facts and circumstances of each case." *Anheuser-Busch, Inc. v. L & L Wings, Inc.*, 962 F.2d 316, 318 (4th Cir. 1992) (quoting *Levi Strauss & Co. v. Blue Bell, Inc.*, 778 F.2d 1352, 1356 n.5 (9th Cir. 1985).

To determine if a likelihood of confusion exists, the court considers nine factors, each of which will be addressed in turn. *Grayson O Co. v. Agadir Int'l LLC*, 856 F.3d 307, 314 (4th Cir. 2017). In assessing if there is a likelihood of confusion, courts are not concerned with "mere theoretical possibilities of confusion" or "de minimis situations" in trademark cases. *See Elec. Design & Sales, Inc. v. Elec. Data Sys. Corp.,* 954 F.2d 713, 717 (Fed. Cir. 1992).

*A. Strength of Plaintiff's Mark*

The strength of the Plaintiff's mark is "paramount" in determining a likelihood of confusion. *Pizzeria Uno Corp. v. Temple*, 747 F.2d 1522, 1527 (4th Cir. 1984). "Measuring a mark's conceptual or inherent strength focuses on the linguistic or graphical 'peculiarity' of the mark, considered in relation to the product, service, or collective organization to which the mark attaches." *CareFirst of Md., Inc. v. First Care, P.C.* 434 F.3d 263, 267 (4th Cir. 2006). Part of this determination involves placing the mark "into one of four categories of distinctiveness: (1) generic; (2) descriptive; (3) suggestive; or (4) arbitrary or fanciful." *George & Co. LLC v. Imagination Ent. Ltd.*, 575 F.3d 383, 393 (4th Cir. 2009).

In determining if a mark is descriptive or suggestive, courts give great weight to the determination of the U.S. Patent & Trademark Office. If the USPTO does not require proof of secondary meaning for registration, it gives "presumptive validity to the right of plaintiff to have its mark registered as suggestive." *Pizzeria Uno*, 747 F.2d at 1534. Here, the USPTO granted registration of the Plaintiff's mark without requiring proof of secondary meaning, entitling Plaintiff Forma to the presumption that its mark is, at least, suggestive. RSUMF 61

However, this does not resolve the inquiry, as the suggestive "designation does not resolve the mark's conceptual strength." *CareFirst*, 434 F.3d at 270. Rather, "'the frequency of prior use of [a mark's text] in other marks, particularly in the same field of merchandise or service,' illustrates the mark's lack of conceptual strength." *Id.* (quoting *Pizzeria Uno*, 747 F.2d at 1530–31).

Here, the Defendant has produced ample evidence to demonstrate that the components of Plaintiff's mark are within wide use throughout the shared market class. The Court is cognizant of the fact that "[w]hen analyzing a composite mark's distinctiveness, courts apply the 'anti-dissection rule,' which requires consideration of the mark as a whole, rather than the component parts in isolation." *Bon Vivant Catering, Inc. v. Duke Univ.*, 2016 WL 3149725, at *10 (M.D.N.C. 2016). For the purposes of discussion only, each component of the mark will be addressed in turn.

Firstly, "FORMA." The movant has provided an extensive list of other companies that use the root "forma" in their marks, including "ONEFORMA," "DEALFORMA," "COFORMA," and "SCIFORMA." DE 31 at 13. All of these companies operate in the software space, with some targeting their platforms specifically to human resources applications. DE 31 at 14. If Plaintiff's mark were truly distinctive, it is "unlikely that… many other businesses in the [software] industry

5

would independently think of using the same mark or similar variants of it." *Grayson O Co. v. Agadir Int'l LLC*, 856 F.3d 307, 316 (4th Cir. 2017).

Second, ".AI." These days, designating a product or service as being powered by artificial intelligence is the equivalent of a drop in the ocean. If the "AI" identifier is not already generic, it is rapidly approaching that point. point. *See Lessons For The AI Safety Institute From The CDC And Trademark Office?*, FORBES (Feb. 10, 2024) (stating that the number of pending or registered trademarks using the term "artificial intelligence" swelled from 700 in 2016 to 50,000 by 2024). In this instance, appending two conceptually weak identifiers does not create a mark stronger than the sum of its parts.

The final step in assessing the strength of the mark requires the Court to look to any evidence that has been produced regarding the substantial commercial use of the "FORMA.AI" mark. The factors to be included in this assessment include "(1) advertising expenditures; (2) consumer studies linking the mark to a source; (3) sales success; (4) unsolicited media coverage of the product; (5) attempts to plagiarize the mark; and (6) the length and exclusivity of the mark's use." *Perini Corp. v. Perini Const., Inc.*, 915 F.2d 121, 124 (4th Cir. 1990).

The Plaintiff's advertising expenditures are comparatively small—since 2016, the Plaintiff has spent less than $5 million on advertising. DE 48 at 34. The Plaintiff argues that the expenditures are small because they are targeting their advertising to a small market segment— however, this naturally leads to the conclusion that the Plaintiff has not sought to expand their reach to broader markets. Further, the Plaintiff has produced no consumer studies indicating that the relevant consuming public has an association with Plaintiff's mark, and only a small number of trade articles discussing Plaintiff's services. DE 31 at 14. Most relevantly, however, the Plaintiff only has 23 customers in the United States—less than half a customer per state. DE 48 at 31.

Though the FORMA.AI mark is entitled to a presumption of suggestiveness, other factors weigh strongly in favor of finding it to be a weak mark. Numerous other companies in the software space use a similar mark, indicating that the mark is not unique or distinctive, and the FORMA.AI mark is not in widespread or meaningful commercial use. The only reasonable determination a jury could reach is that "FORMA.AI" is a weak mark, which weighs against a finding of likelihood of confusion.

*B. Similarity of the Marks*

In testing for similarity, the Court "must examine the allegedly infringing use in the context in which it is seen by the ordinary consumer." *Anheuser-Busch, Inc. v. L & L Wings, Inc.*, 962 F.2d 316, 319 (4th Cir. 1992). Marks are compared in terms of "whether there exists a similarity in sight, sound, and meaning which would result in confusion." *George & Co.*, 575 F.3d at 396.

Here, the marks bear at most a passing resemblance—the only similarity between them is the usage of the word "forma," which, while prominent, does not dominate the mark as a whole. Plaintiff's mark is rendered in capital letters, and distinctively demarcated by the addition of ".AI" at the end. Defendant's mark, conversely, is rendered entirely in lowercase. Finally, while the Plaintiff's symbol is comprised of sharp purple lines creating a letter "F" in the negative space between them, Defendant's symbol is comprised of a grid of multicolored dots. In both color and shape, these marks are visually and materially distinguishable at first glance. This factor weighs against a finding of likelihood of confusion.

*C. Similarity of Goods or Services Offered*

Plaintiff's software platform helps companies in managing sales performance and compensation incentives for their employees. Defendant's software platform helps companies offer personalized benefits, such as health insurance, to their employees. The Plaintiff contends

7

that the relevant market space is all "HR Tech" services, while the Defendant seeks to draw a line between sales incentive software and benefits management software. It is unnecessary for the Court to resolve this dispute, as, for the purposes of this motion, the Defendant has adopted Plaintiff's delineation of the market space and conceded that this factor "somewhat favors Plaintiff." DE 31 at 18. This factor weighs in favor of a likelihood of confusion.

### D. Similarity of Facilities Used

In determining if the types of facilities used by the parties are similar or dissimilar, courts look to the parties' distribution modes for their products. *Swatch AG v. Beehive Wholesale, LLC*, 739 F.3d 150, 160 (4th Cir. 2014). When the parties primarily use different modes of distribution, this factor weighs against a finding of similarity. However, the fact that "both parties use web pages and articles republished on third-party websites" is insufficient to show such similarity. *U.S. Conf. of Catholic Bishops v. Media Research Ctr.*, 432 F. Supp. 2d 616, 627–28 (E.D. Va. 2006).

Here, both the Defendant and the Plaintiff sell their products and services through the use of third-party benefits brokers. However, approximately 70-90% of Defendant's business comes through such brokers, DE 31 at 19, while only 10-15% of Plaintiff's "prospective" customers come through such referrals, DE 48 at 74. Instead, the bulk of Plaintiff's business comes from online sales [DE 48 at 36]. Both parties have admitted that there is some overlap in their customer bases and in trade show attendance [DE 48 at 74, 125], however, neither party has indicated how much of their business comes through such channels.

The Court finds this factor to be neutral in the evaluation of likelihood of confusion. While similar channels are occasionally utilized, the parties do not receive the bulk of their business from the same sources.

### E. *Similarity of Advertising*

In assessing the similarity of advertising, the court "look[s] to both the advertising media used and the areas in which the parties advertise." *Pro-Concepts, LLC v. Resh*, 2013 WL 5741542, at *10 (E.D. Va. 2013). In the world of online advertising, where similar advertisements can be seen nationwide, relevant factors include whether both parties compete directly such that an internet search might pull up both parties at once. *Tropical Nut & Fruit Co. v. Forward Foods, LLC*, 2013 WL 2481521, at *3 (W.D.N.C. 2013).

Both parties maintain pages on LinkedIn, and both parties appear when the term "forma" is searched for on popular search engines. DE 48 at 28. Neither party operates primarily from brick-and-mortar locations, leading the Court to determine that this factor weighs slightly in favor of a likelihood of confusion.

### F. *Defendant's Intent*

Here, the record does not support a finding that the Defendant intended to infringe on Plaintiff's mark, or to take advantage of any goodwill that the Plaintiff had accumulated. The Defendant contracted with an outside marketing firm to handle their rebrand, and selected the "forma" name and logo from a variety of different options that were presented to it. DE 48 at 24–28. At the time that the Defendant filed for the registration of their mark, the Plaintiff had neither a registered mark nor a pending application before the USPTO. This factor weighs against a finding of likelihood of confusion.

### G. *Actual Confusion*

"While a showing of actual confusion is not required to establish infringement, an absence of actual confusion, or a negligible amount of it, between two products after a long period of coexistence on the market is highly probative in showing that little likelihood of confusion exists."

*Aktiebolaget Electrolux v. Armatron Int'l, Inc.*, 999 F.2d 1, 4 (1st Cir. 1993). Conversely, a showing of actual confusion can also be highly probative in determining a likelihood of confusion.

Here, the Plaintiff identified twenty-nine instances that it claims demonstrate confusion. DE 48 at 42–59. However, these instances are not as strong as the Plaintiff claims they are—they largely consist of emails sent to Plaintiff that were intended for Defendant, and none of them are from actual purchasers of Plaintiff's products. *Perini*, 915 F.2d at 127 (stating that the inquiry is whether there is a likelihood that "an appreciable number of ordinarily prudent purchasers will be misled"). The bulk of these communications came from individuals who were seeking to find Defendant Twic, and who quickly realized their error once informed of the difference between the companies.

While this confusion may at first appear damning, the Fourth Circuit has "never adopted the initial interest confusion theory; rather, we have followed a very different mode of analysis, requiring courts to determine whether a likelihood of confusion exists by 'examin[ing] the allegedly infringing use in the context in which it is seen by the ordinary consumer.'" *Lamparello v. Falwell*, 420 F.3d 309, 316 (4th Cir. 2005).

Here, the ordinary consumer is a sophisticated company who is attempting to purchase a software suite to help manage their entire roster of employees at once. The decisionmakers are often C-suite executives, who have a strong incentive to thoroughly investigate the sellers of any products they purchase. These are not one-off, quick sales—rather, they are sales that involve multiple meetings "tailored to the customer and the product," and which are "'unusual and complex' and made with 'care and deliberation' after researching the products." *CDOC, Inc. v. Liberty Bankers Life Ins. Co.*, 844 Fed. App'x 357, 359 (Fed. Cir. 2021). The Plaintiff has produced no evidence showing this type of confusion.

Further, the instances identified by Plaintiff are insufficient to show that substantial, meaningful confusion exceeds *de minimis* levels. While Plaintiff and Defendant dispute how many emails were received by Defendant over the contested period, the evidence is apparent that the twenty-nine inquiries identified by Plaintiff must be cast against a backdrop of at least tens of thousands of emails. DE 48 at 57–58. This is plain *de minimis* confusion. *See, e.g.*, *1-800 Contacts, Inc. v. Lens.com, Inc.*, 722 F.3d 1229, 1244 (10th Cir. 2013) (1.5% confusion rate only *de minimis*); *Universal Money Centers, Inc. v. Am. Tel. & Tel. Co.*, 22 F.3d 1534, 1537 (2.6% confusion rate is *de minimis*); *CareFirst*, 434 F.3d at 268 (2% confusion rate *de minimis*); *Henri's Food Prods. Co., Inc. v. Kraft, Inc.*, 717 F.2d 352, 358–59 (7th Cir. 1983) (7.6% confusion rate weighs against a finding of infringement). This factor therefore does not support a finding of likelihood of confusion.

*H. Quality of Defendant's Product*

In assessing the quality of the defendant's product, the Court looks to whether the product is materially deficient in such a way as to damage the goodwill that the Plaintiff's original product has accumulated in the market as a result of its quality. This element is only usually relevant in "situations involving the production of cheap copies or knockoffs of a competitor's trademark-protected goods." *George & Co.*, 575 F.3d at 399.

Here, neither party has contended that the other is offering a lower-quality or inferior product or service. As such, this factor is neutral for likelihood of confusion.

*I. Sophistication of the Consuming Public*

For the reasons discussed *supra* in Part I-G, the consuming public of these parties' products is highly sophisticated. They both sell to large, multinational companies, who have numerous layers of scrutiny and a powerful incentive to ensure that they are purchasing the product or service

11

they intend to purchase. "Although no one factor is dispositive of the 'likelihood of confusion' inquiry, the sophistication and expertise of the usual purchasers can preclude any likelihood of confusion among them stemming from the similarity of trade names." *Perini Corp. v. Perini Constr., Inc.*, 915 F.2d 121, 127 (4th Cir. 1990). This factor weighs against a finding of a likelihood of confusion.

Taken together, the nine-factor test laid out by the Fourth Circuit indicates that there is no meaningful likelihood of confusion. While the parties use similar methods of advertising and delivering their products, these factors are overcome by the weakness of Plaintiff's mark, the lack of evidence of actual confusion, and the sophistication of the consuming public. The Court accordingly determines that there is no likelihood of confusion as a matter of law, and that summary judgment in favor of Defendant Twic is appropriate on this issue.

## II. Common Law Priority

Currently pending before the U.S. Patent & Trademark Office is Defendant Twic's application for its "forma" mark. That application was submitted on February 15, 2022, and has been stayed pending the outcome of this litigation. If the mark is approved at the conclusion of this litigation, it will have a nationwide priority date of February 15, 2022. This would "establish[ ] a right of priority for the intent-to-use applicant only over others who have not made use of the trademark prior to the filing of the application." *Dunn Computer Corp. v. Loudcloud, Inc.*, 133 F. Supp. 2d 823, 832 (E.D. Va. 2001). Common law trademark rights would continue to exist in "localit[ies] where the mark [has] been used." *Emergency One, Inc. v. Am. Fire Eagle Engine Co.*, 332 F.3d 264, 267 (4th Cir. 2003). The upshot of this is that, if approved, Defendant will have trademark rights in all geographic areas in which the Plaintiff cannot show that it actually used the mark prior to February 15, 2022.

Plaintiff Forma has moved for partial summary judgment on the issue of Defendant Twic's affirmative defense of priority, arguing that Defendant has not raised a genuine issue of material fact as to priority. Plaintiff raises this motion in two steps—the thirty-three "alleged priority" states and the seventeen "conceded" states.

Firstly, Plaintiff has moved for summary judgment on Defendant's priority rights in the thirty-three "alleged priority" states. In support of this motion, the Plaintiff argues that the Defendant's evidence cannot show that they used their pending "forma" mark prior to the date that Plaintiff's mark was registered with the USPTO [DE 25 at 20]. However, this overlooks the critical fact that Defendant's trademark application—which was filed before Plaintiff filed their trademark application—is still pending before the PTO.

Plaintiff is essentially asking the Court to judicially determine the scope of Defendant's rights prior to the resolution of Defendant's pending trademark application. A court must base its decision on summary judgment on the facts "as they now stand," and cannot "rule on an unknown set of facts that may or may not arise in the future." *Olympic Club v. Those Interested Underwriters at Lloyd's London*, 991 F.2d 497, 504 (9th Cir. 1993). The facts as they now stand indicate that that the Defendant may have trademark rights with a priority date of February 15, 2022. It is true that "no statutory trademark rights to preclude others from using a mark vest in the applicant until the PTO registers the trademark," *Dunn*, 133 F. Supp. 2d at 832, but Defendant Twic is not trying to preclude Plaintiff Forma from using a mark here—instead, Defendant seeks only the opportunity to lawfully prosecute its application before the USPTO. A genuine issue of material fact exists, and as such, summary judgment on the thirty-three "alleged priority" states is inappropriate.

Second, the Plaintiff seeks summary judgment on Defendant's affirmative defense of priority in the seventeen "conceded" states of North Carolina, Texas, California, Arizona,

Minnesota, Indiana, Illinois, Pennsylvania, Wyoming, Alaska, Iowa, Montana, North Dakota, South Dakota, New Hampshire, West Virginia, and Kentucky [DE 25 at 18]. The Plaintiff argues that no reasonable jury could find that Defendant Twic has common law priority in those states because, it claims, the Defendant disclaimed priority in those states during depositions.

Here, the Plaintiff finds themselves on firmer footing. A party cannot avoid summary judgment by attempting to contradict admissions and concessions previously made during depositions and written discovery. *Cooper v. Smithfield Packing Co., Inc.*, 2016 WL 7031555, at *6 (E.D.N.C. 2016), *aff'd*, 724 Fed. App'x 197 (4th Cir. 2018). During sworn deposition testimony, Defendant Twic stated that it did not claim priority in those seventeen states and reaffirmed such declamations when questioned directly by opposing counsel [DE 27-7 at 8–11]. The Defendant does not contest or qualify that it made these admissions.

While the eventual approval of Defendant's pending trademark application would lead to nationwide trademark rights, that does not change the fact that Defendant has expressly disclaimed their common law priority argument in the seventeen states listed above. The Defendant has produced no evidence to the contrary, and summary judgment on this limited issue is appropriate. In so ruling, the Court does not determine that Plaintiff FORMA.AI has common law trademark rights in any state at all—merely that the Defendant has conceded that they do not have common law trademark priority in the seventeen "conceded" states.

## CONCLUSION

For the foregoing reasons, Plaintiff Forma's motion for summary judgment on the issue of common law priority [DE 24] is GRANTED IN PART and DENIED IN PART. Summary judgment is granted to Plaintiff only on the issue of Defendant's common law priority defense in the seventeen states of North Carolina, Texas, California, Arizona, Minnesota, Indiana, Illinois,

14

Case 4:23-cv-00077-BO-BM     Document 56     Filed 03/31/25     Page 14 of 15

Pennsylvania, Wyoming, Alaska, Iowa, Montana, North Dakota, South Dakota, New Hampshire, West Virginia, and Kentucky. Plaintiff's motion as to the remaining thirty-three states is denied.

Defendant Twic's motion for summary judgment on the issue of the likelihood of confusion [DE 29] is GRANTED.

SO ORDERED, this 31 day of March 2025.

*Terrence Boyle*
TERRENCE W. BOYLE
UNITED STATES DISTRICT JUDGE