# IN THE UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF NORTH CAROLINA

FORMA AI INC.,

        Plaintiff,

 v.

TWIC, Inc.,

        Defendant.

Civil Action File No.: 4:23-cv-77

**Expert Report of**

**Graham D. Rogers, ASA, MRICS CVS, CLP**

**Submitted:  April 19, 2024**

# I. EXPERT QUALIFICATIONS AND ASSIGNMENT

1. I, Graham D. Rogers, am a partner at Eisner Advisory Group, LLC (hereafter referred to as "EA Group"), an international advisory firm.[1]

2. I have spent twenty-seven (27) of my thirty-six (36) year professional career working with clients on matters concerning dispute consulting, valuation, and pricing. I am specifically experienced in consulting with respect to financial, accounting, and economic matters as they relate to the determination of damages in intellectual property disputes including trademark, infringement matters similar to this matter. A copy of my Curriculum Vitae, which contains my experience and lists my speaking engagements and expert witness testimony, is provided in **Exhibit A**.

3. The consultancy fee charged by EA Group for my services in this matter is $585 per hour. EA Group's fees are not contingent upon the outcome of this matter.

4. I have been retained by Ward and Smith, P.A. (hereafter referred to as "Counsel") on behalf of its client Forma AI Inc. to analyze accounting, financial, and other business data for purposes of assisting Counsel in identifying damages, if any, arising from its trademark infringement claims against Twic, Inc.

5. This report sets forth my expert opinions based on information available to me as of the date of this report. A complete list of documents considered in forming my opinion is set forth in **Exhibit B** and cited throughout this report and exhibits and a list of personnel

---

[1] EisnerAmper LLP ("EisnerAmper") and Eisner Advisory Group LLC ("EA Group") practice as an alternative practice structure in accordance with the AICPA Code of Professional Conduct and applicable law, regulations, and professional standards. EisnerAmper provides attest services to its clients. EA Group is not a licensed CPA firm and does not provide audit or attest services.

interviewed in connection with my work in this matter is set forth in **Exhibit C**. I reserve the right to supplement or amend this report based on additional information coming to my attention, including additional discovery obtained or evidence presented at trial in this case.

6.    In forming and expressing my opinions, I have relied solely on sources on which experts in my field routinely rely. I have relied on the representations of Counsel and Forma AI Inc. that all of the information provided to me is not in any way false, inaccurate, incomplete or misleading, and that no information that would have had any bearing on my conclusions has been intentionally withheld.

7.    I reserve the right to supplement or amend this report, and prepare any exhibits that may be required, based on additional information coming to my attention, including additional discovery obtained or evidence presented at trial in this case.

## II.    BACKGROUND[2]

### A.    PARTIES

#### 1.    *Forma AI Inc.*

8.    Forma AI Inc. (hereafter referred to as "Forma.AI" or "Plaintiff"), headquartered in Toronto, Ontario, is an "international sales performance and management solutions company" that offers an artificial intelligence-based software platform.[3]

9.    Forma.AI is described on their website as follows:

> Today, Forma.ai takes a fundamentally different approach to motivating and guiding sellers – with AI at the core. We have reinvented how enterprises design, administer, and optimize sales compensation. Our CompOps platform gives sales comp teams the control and flexibility to manage enterprise complexity and deliver world-class sales comp plans and processes – all without tool-specific technical expertise.[4]

10.    I understand that Forma.AI is the owner of United States (hereafter referred to as "U.S.") Trademark Registration Number 7,048,525, applied as of April 1, 2022 and registered as of May 9, 2023, for use in "business consultation services, namely, sales performance consultation in the field of reporting, modeling, analyzing, and improving programs for sales compensation, segmentation, sales territory design, quota management, revenue productivity, and benchmarking" and in "business collaboration services, namely, fostering knowledge sharing in the fields of sales performance management, sales compensation

---

[2] My understanding of the background facts of this case is based upon materials provided by Counsel, discussions with representatives of Forma.AI, legal pleadings, and other materials cited in this Report.

[3] Amended Complaint para.5 and para. 7.

[4] https://www.forma.ai/about

CONFIDENTIAL – ATTORNEY'S EYES ONLY
Page 4 of 66

management, and technology selection" (hereafter referred to as the "FORMA.AI Mark")

as shown below.[5]

**U.S. Trademark Registration No. 7,048,525**



11.     In addition to the FORMA.AI Mark, I understand that Forma.AI has filed an application

as of January 24, 2023, that is currently under examination.  This pending application is

U.S. Trademark Application Serial Number 97765724 and is for use in "business education

and training services, namely, training programs and coaching services in the field of sales

compensation, segmentation, sales territory design, quota management, revenue

productivity, and benchmarking" and for "providing online non-downloadable

publications in the field of sales performance management and technology selection;

organizing educational events in the field of sales performance management and

technology selection" (hereafter referred to as the "FORMA.AI Training Mark") as shown

below.[6]

---

[5]

https://tsdr.uspto.gov/#caseNumber=97342791&caseSearchType=US_APPLICATION&caseT
ype=DEFAULT&searchType=statusSearch (U.S. Trademark Registration No. 7,048,525)

[6]

https://tsdr.uspto.gov/#caseNumber=97765724&caseSearchType=US_APPLICATION&caseT
ype=DEFAULT&searchType=statusSearch (U.S. Trademark Application Serial No. 97765724)



12.     The above U.S. Trademark Registration and Trademark Application are collectively referred to as the "FORMA.AI Marks."

13.     Forma.AI began using the FORMA.AI Marks in connection with their software platform in Canada in 2016.[7]  In order to expand their market to the U.S., Forma.AI began a series of direct marketing efforts targeting prospective customers in a number of states throughout 2017 and 2018.[8] Forma.AI entered "into a contract with a customer in the U.S. for the first time in September 2018."[9]

14.     I understand that through the use of the FORMA.AI Marks, "consumers generally refer to Plaintiff as 'FORMA' in the marketplace."[10]

### 2.     Twic, Inc.

15.     Twic, Inc. (hereafter referred to as "Twic" or "Defendant"), headquartered in Fremont, California, "is a provider of a software platform that offers personalized employee benefits, healthcare benefits, insurance benefits and lifestyle benefits to employees."[11]  Twic offers

---

[7] Amended Complaint para. 9.
[8] Forma.AI Interrogatory Response No. 9.
[9] Amended Complaint para. 9.
[10] Amended Complaint para. 13.
[11] Amended Complaint para. 6 and para. 26.

a flexible benefits suite that includes products such as a lifestyle spending account, health reimbursement arrangements, and pre-tax accounts.[12]

16. I understand that Twic filed U.S. Trademark Application Serial Number 97268559 on February 15, 2022 for the following mark for use in "software as a service (SAAS) services featuring computer software platforms for human resource professionals to offer personalized employees benefits, healthcare benefits, insurance benefits and lifestyle benefits to employees" (hereafter referred to as the "Infringing Mark").[13]



17. I understand that the Infringing Mark is currently pending due to opposition.[14]

18. I understand that on March 8, 2022 Twic publicly announced their rebranding from Twic to "FORMA."[15]

---

[12] https://www.joinforma.com/products/lifestyle-spending-account, https://www.joinforma.com/products/health-reimbursement-arrangement, and https://www.joinforma.com/products/pre-tax.

[13] https://tsdr.uspto.gov/#caseNumber=97765724&caseSearchType=US_APPLICATION&caseType=DEFAULT&searchType=statusSearch (U.S. Trademark Application Serial No. 97765724)

[14] https://tsdr.uspto.gov/#caseNumber=97765724&caseSearchType=US_APPLICATION&caseType=DEFAULT&searchType=statusSearch (U.S. Trademark Application Serial No. 97765724)

[15] Amended Complaint para. 28 and https://www.joinforma.com/resources/twic-rebrands-forma-transforming-employee-benefits

B. **ALLEGATIONS**

19. I understand that Forma.AI has alleged the following claims against Defendant including, but not limited to:

- Defendant has "committed the foregoing acts of infringement with full knowledge of Plaintiff's prior rights in the FORMA.AI Mark and with the willful intent to cause confusion and trade on Plaintiff's goodwill."[16]

- Defendant's conduct "as alleged herein is willful and is intended to and is likely to cause confusion, mistake, or deception as to the affiliation, connection, or association of Defendant with Plaintiff."[17]

- Defendant's infringement constitutes "'unlawful, unfair or fraudulent business act[s] or practice[s] and unfair, deceptive, untrue or misleading advertising' with the meaning of California Business & Professions Code Section 17200."[18]

- Defendant has "violated principles of the common law of unfair competition of the State of North Carolina by passing off its services as those of Plaintiff, by competing unfairly, and by employing deceptive trade practices."[19]

20. I understand that beginning as of April 18, 2022, Forma.AI has sent multiple cease and desist letters to Defendant "objecting to Defendant's use of the Infringing Mark and Trademark Application Serial No. 97268559."[20]

21. I understand that Forma.AI claims there is "no evidence that Defendant has complied with the demands set out in Plaintiff's counsel's four cease and desist letters or even attempted to resolve the instances of consumer confusion raised by Plaintiff for almost one year."[21]

---

[16] Amended Complaint para. 56.
[17] Amended Complaint para. 62.
[18] Amended Complaint para. 67.
[19] Amended Complaint para. 70.
[20] Amended Complaint para. 38.
[21] Amended Complaint para. 48.

22. I understand that Forma.AI claims that it suffered and continues to suffer damages resulting from Defendant's alleged infringement.[22]

---

[22] Amended Complaint para. 53.

### III. ECONOMIC REMEDIES: TRADEMARK INFRINGEMENT

### A. TRADEMARK INFRINGEMENT CLAIMS

23.   The USPTO defines a trademark as:

> A trademark can be any word, phrase, symbol, design, or a
> combination of these things that identifies your goods or services.
> It's how customers recognize you in the marketplace and distinguish
> you from your competitors.[23]

24.   The USPTO defines trademark infringement as:

> Trademark infringement is the unauthorized use of a trademark or
> service mark on or in connection with goods and/or services in a
> manner that is likely to cause confusion, deception, or mistake about
> the source of the goods and/or services.[24]

25.   I understand that should Twic be found to have infringed Forma.AI trademark(s), the

Lanham Act (hereafter referred to as the "Lanham Act") provides that Forma.AI may be

able:

> …to recover (1) defendant's profits, (2) any damages sustained by
> the plaintiff, and (3) the costs of the action.  The court shall assess
> such profits and damages or cause the same to be assessed under its
> direction.  In assessing profits, the plaintiff shall be required to prove
> defendant's sales only; defendant must prove all elements of cost or
> deduction claimed.   In assessing damages, the court may enter
> judgment, according to the circumstances of the case, for any sum
> above the amount found as actual damages, not exceeding three
> times such amount.  If the court shall find that the amount of the
> recovery based on profits is either inadequate or excessive the court
> may in its discretion enter judgment for such sum as the court shall

---

[23] https://www.uspto.gov/trademarks/basics/what-trademark
[24] https://www.uspto.gov/page/about-trademark-infringement

find to be just, according to the circumstances of the case. Such sum in either of the above circumstances shall constitute compensation and not a penalty. The court in exceptional cases may award reasonable attorney fees to the prevailing party.[25]

26. Should the Court determine that Forma.AI is entitled to trademark infringement damages, I understand that (1) actual damages in the form of lost profits and/or reasonable royalties, among other things; (2) infringer's profits; and/or (3) actual costs such as attorney's fees are commonly accepted remedies of damages in trademark infringement matters.[26] I understand that Forma.AI may be entitled to actual damages, infringer's profits, and/or actual costs to the extent that they are not duplicative.

---

[25] 15 USC § 1117. *See also:* AICPA & CIMA, *Forensic & Valuation Services Practice Aid, Calculating Damages in Intellectual Property Disputes, Fourth Edition* (Durham, North Carolina: AICPA, 2020), p. 15.

[26] Roman L. Weil, Daniel G. Lentz, and David P. Hoffman, *Litigation Services Handbook, Sixth Edition, The Role of the Financial Expert*, (New Jersey: John Wiley & Sons, Inc., 2012), Chapter 18.6, p. 18.26.

CONFIDENTIAL – ATTORNEYS' EYES ONLY
Page 11 of 66

## IV.    ANALYSIS OF ACTUAL DAMAGES

27.    It is my opinion that should the Court or the Jury determine that Twic is liable, and Forma.AI is entitled to actual damages, reasonable royalty damages are an appropriate remedy of damages to Forma.AI in this matter based on the information I have available to me at this time.

28.    To determine an appropriate royalty that Forma.AI would have earned but for Twic's alleged actions, it is necessary to consider what the parties would have agreed to under the construct of a hypothetical negotiation.

29.    In patent infringement matters, the Court has historically recognized the guidance set forth in the *Georgia-Pacific Corp. v. U.S. Plywood Corp.*[27] (hereafter referred to as "*Georgia-Pacific*") framework as well as other factors relevant to a hypothetical negotiation. Although this matter is not a patent infringement matter, the *Georgia-Pacific* framework provides guidance to experts and the parties when determining a hypothetical license value. In my experience, this framework is frequently used in non-patent disputes, including trademark infringement matters.

### 1.    Damages Period

30.    For purposes of my analysis, I have been instructed to assume a damages period beginning March 2022 (the time around which I understand Twic rebranded to Forma[28]) through November 2023 (the most recent financial information provided by Twic to date).  I understand that Forma.AI believes that it continues to suffer damages due to Twic's

---

[27] *Georgia-Pacific Corp. v. U.S. Plywood Corp.,* 318 F. Supp.1116, 6 USPQ 235 (S.D.N.Y. 1970).
[28] Amended Complaint para. 28 and https://www.joinforma.com/resources/twic-rebrands-forma-transforming-employee-benefits

continued infringement of the FORMA.AI Marks. Should additional information become available, I reserve the right to update my analysis and this report, if asked to do so.

### 2. Royalty Base

31. Based on the information available to me as of the date of my report, it is my opinion that the royalty base should be Twic's revenues derived from products and/or services sold using the Infringing Marks from March 2022 (the date of first infringement) through November 2023 (the date of the most recent financial information provided by Twic as of the date of my report) or $██████.[29]

### 3. Parties to the Hypothetical Negotiation

32. I understand that the parties to the hypothetical negotiation would be Forma.AI as the licensor and Twic as the licensee.

### 4. Date of Hypothetical Negotiation

33. It is my opinion that the hypothetical negotiation would likely have occurred in March 2022 on the eve of infringement as Twic prepared to rebrand to Forma.

### 5. The Starting Royalty Rate

34. As previously discussed, my analysis of a reasonable royalty is outlined in conjunction with a discussion of the *Georgia-Pacific* factors and a hypothetical negotiation between the parties. To determine a starting royalty, I considered actual licensing of the FORMA.AI Marks. In addition, I considered third party licensing databases.

---

[29] Defendant's Third Supplemental Response to the First Set of Interrogatories, Interrogatory No. 14, Second Supplemental Response, p. 19 (Jason Fan Deposition Exhibit 3). As of the date of my report, Defendants have not provided revenue data that allows me to provide any analysis of damages by year.

CONFIDENTIAL – ATTORNEYS' EYES ONLY
Page 13 of 66

### a. Forma.AI's License Agreements

35.    I have seen no documents produced by Forma.AI related to any licensing agreements and understand based on conversations with its management that Forma.AI has not licensed its FORMA.AI Marks.  Therefore, there are no licenses to provide guidance in determining an established reasonable royalty in this matter.

### b. Twic's License Agreements

36.    I have seen no documents produced by Twic related to any licensing agreements. Therefore, there are no licenses to provide guidance in determining an established reasonable royalty in this matter.

### c. Comparable Third-Party License Agreements

37.    I understand that, through conversations with Forma.AI management, that the applicable NAICS codes for Forma.AI are as follows:

- 54151 (Computer Systems Design and Related Services) which I understand includes establishments primarily engaged in providing expertise in the field of information technologies through one or more of the following activities: (1) writing, modifying, testing, and supporting software to meet the needs of a particular customer; (2) planning and designing computer systems that integrate computer hardware, software, and communication technologies; (3) on-site management and operation of clients' computer systems and/or data processing facilities; and (4) other professional and technical computer related advice and services; and[30]
- 518210 (Computing Infrastructure Providers, Data Processing, Web Hosting, and Related Services) which I understand includes establishments primarily engaged in providing computing infrastructure, data processing services, Web hosting services (except software publishing), and related services, including streaming support services (except streaming distribution services). Data processing establishments provide complete processing and

---

[30] https://www.census.gov/naics/?input=54151&year=2022&details=54151

specialized reports from data supplied by clients or provide automated data processing and data entry services.[31]

38.    I understand that the corresponding SIC codes are as follows:

- 7373 (Computer Integrated Systems Design) which I understand includes establishments primarily engaged in developing or modifying computer software and packaging or bundling the software with purchased computer hardware (computers and computer peripheral equipment) to create and market an integrated system for specific application; and[32]
- 7374 (Computer Processing and Data Preparation and Processing Services) which I understand includes establishments primarily engaged in providing computer processing and data preparation services. The service may consist of complete processing and preparation of reports from data supplied by the customer or a specialized service, such as data entry or making data processing equipment available on an hourly or time-sharing basis.[33]

39.    Based on the above, I conducted a search of ktMINE and RoyaltyStat, both widely accepted royalty databases, to ascertain whether any comparable royalty information may be available.

40.    This search using both databases resulted in seven hundred and twenty-two (722) agreements across the two (2) SIC codes.  I then applied additional filters (included manufacturing/process intangibles, marketing intangibles, service, and software / excluded the following agreement types:  asset purchase, cross license, distribution, franchise, joint development, and other). Finally, I applied the following keyword searches (included agreements with 'trademark' and 'trade name' / excluded agreements with 'patent' and 'copyright'). This search resulted in thirty-one (31) agreements.

---

[31] https://www.census.gov/naics/?input=518210&year=2022&details=518210
[32] https://www.osha.gov/sic-manual/7373
[33] https://www.osha.gov/sic-manual/7374

CONFIDENTIAL — ATTORNEYS' EYES ONLY
Page 15 of 66

41.     I then began a step-by-step analysis to determine which, if any, of these thirty-one (31) agreements should be considered as comparable.  In step 1, I removed all licensing agreements that did not have net sales or gross revenue as the base.  In step 2, I removed all licensing agreements that were listed as sublicenses or referrals, licenses that had geography that did not include North America or Worldwide, and agreement types that were not for manufacturing/process intangibles, marketing intangibles, service or software. In step 3, I removed all license agreements that were duplicates or outdated versions.  In step 4, I removed all license agreements that, based on RoyaltyStat descriptions, were not equitable to Forma.AI product and industry. After these four (4) steps, four (4) agreements remained. The table below summarizes my culling of the agreements.

| Royalty Rate Database(s) Search & Review | |
| --- | --- |
| Potentially Comparable Agreements | 31 |
| Less: Step 1 - Not Equitable Base | 1 |
| Less: Step 2 - Not Equitable Agreement Type/Level/Territory | 4 |
| Less: Step 3 - Duplicate or Outdated version | 4 |
| Less: Step 4 - Not Equitable to Target Company/Industry | 18 |
| Remaining Potential Comparable Agreements | 4 |

42.     Next, I reviewed the description of the four (4) remaining agreements and compared the descriptions to the intellectual property owned by Forma.AI.  The result of reviewing the ktMINE and RoyaltyStat searches and the supporting documentation resulted in four (4)

CONFIDENTIAL - ATTORNEYS' EYES ONLY
Page 16 of 66

agreements. The statistical details of the four (4) agreements are as follows, adjusted for non-exclusivity when applicable:[34]

| Statistical Table of Royalty Rates Identified | | |
| --- | --- | --- |
| | Low | High |
| Maximum | 10.00% | 10.00% |
| Upper Quartile | 4.00% | 4.75% |
| Median | 1.68% | 3.00% |
| Lower Quartile | 1.35% | 2.75% |
| Minimum | 1.35% | 2.00% |
| Number of Agreements | 4 | |

   d.   *Summary of Starting Royalty Rate*

43.    Based on the above, it is my opinion that the appropriate structure of a licensing fee would be running royalty based on a percent of net sales. Furthermore, it is my opinion that a starting royalty should be based on the low end of the Lower Quartile to the high end of the Upper Quartile (1.35 percent to 4.75 percent) as determined from the statistical range established by the ktMINE and RoyaltyStat search results before any adjustments based on a *Georgia-Pacific* analysis.

---

[34] *See* Phillips/Charles Rivers Associates Presentation "Determination of Royalty Rates for Trademarks/Brands" (3/15/2006) [Study shows 5:3 and/or 2:1 Price Premium Ratio (Exclusive: Non-exclusive)]; Intellectual Property – Valuation, Exploitation, and Infringement Damages: discussing increase in royalty in License Renegotiation between Molecular Biosystems' and E.I. du Pont de Nemours' 27 percent rate reduction based solely on conversion from exclusive to non-exclusive]; Licensing Executive Society ("LES") *Chemicals, Energy, Environmental and Materials (CEEM) Royalty Rate Survey and Deal Terms* (Sept. 2010) Advanced Development/Early Stage: depending on stage of development of the technology, exclusivity commanded a price premium between 10.7 percent and 27.8 percent]. [See **Exhibit I**]

### 6. The Effect of Exclusivity on a Royalty Rate

44. Given the hypothetical negotiation, Forma.AI would have licensed the FORMA.AI Marks to Twic at a non-exclusive level in order for Forma.AI to continue to use and/or monetize the marks itself. Exclusivity typically has the effect of increasing the license value as compared to a non-exclusive license. I applied exclusive to non-exclusive adjustments in my analysis where appropriate. Therefore, no additional adjustment is required based on this factor.[35]

### 7. Application of the Georgia-Pacific Factors

45. A generally-accepted method of determining the relative negotiating strengths of the potential licensor and licensees is to analyze the business factors set forth in *Georgia–Pacific*. As noted above, I understand that *Georgia-Pacific* is not strictly binding on the Court, and that the Court applies *Georgia-Pacific* by analogy and with some flexibility. With this standard in mind, I have analyzed factors set forth in *Georgia-Pacific* as they pertain to the parties and this matter. My analysis of these factors and their effect on the subsequent licensing fee in this matter is set forth below.

---

[35] *See* Phillips/Charles Rivers Associates Presentation "Determination of Royalty Rates for Trademarks/Brands" (3/15/2006) [Study shows 5:3 and/or 2:1 Price Premium Ratio (Exclusive: Non-exclusive)]; Intellectual Property – Valuation, Exploitation, and Infringement Damages: discussing increase in royalty in License Renegotiation between Molecular Biosystems' and E.I. du Pont de Nemours' 27 percent rate reduction based solely on conversion from exclusive to non-exclusive]; Licensing Executive Society ("LES") *Chemicals, Energy, Environmental and Materials (CEEM) Royalty Rate Survey and Deal Terms* (Sept. 2010) Advanced Development/Early Stage: depending on stage of development of the technology, exclusivity commanded a price premium between 10.7 percent and 27.8 percent]. [See **Exhibit I**]

CONFIDENTIAL – FOR ATTORNEYS' EYES ONLY
Page 18 of 66

| 1. | **The royalties received by the [licensor] for the licensing of the [trademark] in suit, proving or tending to prove an established royalty.**<br><br>As previously discussed, I have seen no documents produced by Forma.AI related to any licensing agreements and understand based on conversations with its management that Forma.AI has not licensed its FORMA.AI Marks. Therefore, there are no licenses to provide guidance in determining an established reasonable royalty in this matter.<br><br>Impact: *Neutral impact on bargaining position* |
|---|---|
| 2. | **The rates paid by the licensee for the use of other [trademarks] comparable to the [trademarks] in suit.**<br><br>I have not been provided any information regarding licenses into which Twic has entered.<br><br>Impact: *Neutral impact on bargaining position* |
| 3. | **The nature and scope of the license, as exclusive or non-exclusive; or as restricted or non-restricted in terms of the territory or with respect to whom the manufactured product may be sold.**<br><br>Forma.AI would have sought a non-exclusive arrangement in this matter. A non-exclusive license with Twic would allow Forma.AI to continue to use and/or monetize the marks itself. As discussed previously, exclusive licensing arrangements tend to garner higher royalty rates as compared to non-exclusive arrangements. As part of my identification of a starting royalty rate, the |

| | |
|---|---|
| | comparable agreements were adjusted to a non-exclusive level and, therefore, no additional adjustments for exclusivity are needed.<br><br>Impact: _Neutral impact on bargaining position; already considered_ |
| 4. | **The licensor's established policy and marketing program to maintain his [trademark] monopoly by not licensing others to use the invention or by granting licenses under special circumstances designed to preserve the monopoly.**<br><br>As previously discussed, I have seen no documents produced by Forma.AI related to any licensing agreements and understand based on conversations with its management that Forma.AI has not licensed its FORMA.AI Marks. I understand that Forma.AI would not seek to license its FORMA.AI Marks in the normal course of business as any license granted within the U.S. would only further dilute Forma.AI's own brand.<br><br>Impact: _Tends to favor Forma.AI's bargaining position_ |
| 5. | **The commercial relationship between the licensor and the licensee, such as, whether they are competitors in the same territory in the same line of business; or whether they are inventor and promoter.**<br><br>I am not aware of the licensor's and licensee's products and services competing directly. However based on conversations with Forma.AI management, I understand that Forma.AI and Twic sell into the same customers and crossover human resource departments and that the parties' products and services are |

| | |
|---|---|
| | highly related.[36] I also understand that the parties regularly compete for funding and venture capital and investors and that there is, therefore, a need to ensure that there is no confusion among VC Firms and investors. Furthermore, I understand that the parties could compete for customers in the sense that an HR Department may not have the budget to purchase the software products of both parties.<br><br>Impact: *Tends to favor Forma.AI's bargaining position* |
| **6.** | **The effect of selling the [trademark] in promoting sales of other products of the licensee; the existing value of the value of the invention to the licensor as a generator of sales of its non-[protected] items; and the extent of such derivative or convoyed sales.**<br><br>Not applicable.<br><br>Impact: *Neutral impact on bargaining position* |
| **7.** | **The duration of the [trademark] and the term of the license.**<br><br>Unlike patents, trademarks have an unlimited life as long as maintenance fees continue to be paid.<br><br>Impact: *Tends to favor Forma.AI's bargaining position* |

---

[36] The evidence I have reviewed supports what I learned from the conversation. *See* Forma.AI Response to Interrogatory Nos. 15 and 16; Jason Fan Deposition Testimony at 58:14–25; 59:1–25; 60:1–19 (discussing overlapping potential customers and types of industries targeted).

| | |
|---|---|
| 8. | **The established profitability of the [trademark]; its commercial success; and its current popularity.**<br><br>The information provided by the parties in this matter supports the fact that the products are commercially successful and profitable.  I understand that Forma.AI has generated revenues derived from products bearing the FORMA.AI Marks within the U.S. as early as 2017 (fiscal year 2018). Between fiscal year 2018 and February 2024 (fiscal year to date 2025), Forma.AI had revenues from U.S. customers of $██████.[37]<br><br>Impact:  _Tends to favor Forma.AI's bargaining position_ |
| 9. | **The utility and advantages of the [trademark] over the old modes or devices, if any, that had been used for working out similar results.**<br><br>The FORMA.AI Marks were designed for specific purposes as previously discussed.  Therefore, a comparison to "old modes or devices" is not appropriate.<br><br>Impact:  _Neutral impact on bargaining position_ |

---

[37] **Exhibit G.**

CONFIDENTIAL - ATTORNEYS' EYES ONLY
Page 22 of 66

| 10. | **The nature of the [trademark]; the character of the commercial embodiment of it as owned and produced by the licensor; and the benefits to those who have used the invention.** |
|---|---|
| | I understand that Forma.AI is the owner of the FORMA.AI Marks. Even though I have not been asked to value the trademarks in question, in all likelihood, they have increased in value since conception. |
| | Impact: *Tends to favor Forma.AI's bargaining position* |
| 11. | **The extent to which the infringer has made use of the [trademark]; and any evidence probative of the value of that use.** |
| | Based on the Defendant's Third Supplemental Response to the First Set of Interrogatories, it is likely that Twic benefited from the alleged acts. The revenue generated during March 2022 through November 2023 is $██████.[38] |
| | Impact: *Tends to favor Forma.AI's bargaining position* |

---

[38] Defendant's Third Supplemental Response to the First Set of Interrogatories, Interrogatory No. 14, Second Supplemental Response, p. 19 (Jason Fan Deposition Exhibit 3). As of the date of my report, Defendants have not provided revenue data that allows me to provide any analysis of damages by year.

CONFIDENTIAL – ATTORNEY'S EYES ONLY
Page 23 of 66

| | |
|---|---|
| **12.** | **The portion of the profit or of the selling price that may be customary in the particular business or in comparable businesses to allow for the use of the [trademark].**<br><br>I am not aware of any customary practice within the industry which allows for an apportioning of the profit between the licensor and licensee thus allowing the use of the trademarks.<br><br>Impact: *Neutral impact on bargaining position* |
| **13.** | **The portion of the realizable profit that should be credited to the invention as distinguished from non-[protected] elements, the manufacturing process, business risks, or significant features or improvements added by the infringer.**<br><br>Not applicable.<br><br>Impact: *Neutral impact on bargaining position* |
| **14.** | **The opinion testimony of qualified experts.**<br><br>I am not aware of any expert opinions regarding reasonable royalty rates associated with the trademark in question.<br><br>Impact: *Neutral impact on negotiating position* |

CONFIDENTIAL – ATTORNEYS' EYES ONLY
Page 24 of 66

| 15. | **The amount that a licensor (such as the patentee) and a licensee (such as the infringer) would have agreed upon (at the time infringement began) if both had been reasonably and voluntarily trying to reach an agreement; that is the amount that a prudent licensee—who desired, as a business proposition, to obtain a license to manufacture and sell a particular article embodying the [trademark] invention—would have been willing to pay as a royalty and yet be able to make a reasonable profit and which amount would have been acceptable by a prudent [licensor] who was willing to grant a license.** |
|---|---|

The final *Georgia-Pacific* factor refers to the conclusion that the finder of fact would reach regarding the licensing fee based on the consideration of the previous 14 factors as well as other information that may be available.

The following table is a summary of the 15 specific factors identified and analyzed above and their expected effect on the hypothetical negotiation:

| Georgia-Pacific Factor No. | Effect on Hypothetical Negotiation From Licensee's Perspective |
|---|---|
| 1 | Neutral impact |
| 2 | Neutral impact |
| 3 | Neutral impact |
| 4 | Tends to favor Forma.AI |
| 5 | Tends to favor Forma.AI |
| 6 | Neutral impact |
| 7 | Tends to favor Forma.AI |

| Georgia-Pacific Factor No. | Effect on Hypothetical Negotiation From Licensee's Perspective |
|---|---|
| 8 | Tends to favor Forma.AI |
| 9 | Neutral impact |
| 10 | Tends to favor Forma.AI |
| 11 | Tends to favor Forma.AI |
| 12 | Neutral impact |
| 13 | Neutral impact |
| 14 | Neutral impact |
| 15 | Neutral impact |

It is my opinion that the *Georgia-Pacific* factors and other relevant considerations would place Forma.AI in a stronger bargaining position during the hypothetical negotiation.

Based on the above analysis, in my opinion, Forma.AI and Twic would have started with a running royalty as a percent of net sales ranging from 1.35 percent to 4.75 percent. However, taking into consideration the relevant *Georgia-Pacific* factors and all other available information, it is my opinion that the parties would have acknowledged:

- Third-party searches identified 4 comparable licensing agreements that had reasonable royalties with a low lower quartile of 1.35 percent and a high upper quartile of 4.75 percent;
- Any license agreement would be non-exclusive in order to allow Forma.AI to continue to utilize and monetize the Forma.AI Marks;

- The FORMA.AI Marks cover the entire company (e.g., brand) rather than a portion (e.g., product) of the company;

- Forma.AI would not seek to license its FORMA.AI Marks within the U.S. (or elsewhere) as any use of the mark by another party would dilute Forma.AI's own brand;

- Forma.AI and Twic sell into the same customers and crossover human resource departments and the parties' products and services are highly related.[39] The parties regularly compete for funding and venture capital (VC) and investors and there is, therefore, a need to ensure that there is no confusion among VC Firms and investors. Furthermore, the parties could compete for customers in the sense that an human resources department may not have the budget to purchase the software products of both parties; and

- Twic has benefitted from use of the Infriging Mark. Twic's revenues derived from products bearing the Infringing Marks between March 2022 and November 2023 is $▮▮▮▮▮▮. Forma.AI believes that Twic continues to benefit from use of the Infringing Marks.

Based on the above, it is my opinion that the parties would have agreed to a running royalty at the low end of the upper quartile of the 4 comparable agreements identified, 4.0 percent. This is based largely on the fact that the FORMA.AI Marks cover the entire company/brand rather than a product within the company. Any license for the FORMA.AI Marks would directly affect the company as a whole rather than a subset of the company.

---

[39] The evidence I have reviewed supports what I learned from the conversation. *See* Forma.AI Response to Interrogatory Nos. 15 and 16; Jason Fan Deposition Testimony at 58:14–25; 59:1–25; 60:1–19 (discussing overlapping potential customers and types of industries targeted).

CONFIDENTIAL - ATTORNEY'S EYES ONLY
Page 27 of 66

*8. Calculation of Reasonable Royalty*

46.    Based on the above analysis, it is my opinion that should Twic be found liable and Forma.AI is entitled to damages, reasonable royalty damages would be $██████.  See **Exhibit E.**

# V.    ANALYSIS OF UNJUST ENRICHMENT

###    1.    *Damages Period*

47.    For purposes of my analysis, I have been instructed to assume a damages period beginning March 2022 (the time of first infringement) through November 2023 (the most recent financial information).   I understand that Forma.AI believes that it continues to suffer damages due to Twic's continued infringement of the FORMA.AI Marks.   Should additional information become available, I reserve the right to update my analysis and this report, if asked to do so.

###    i.    *Defendant Profits Available for Disgorgement*

###    1.    *Unjust Sales*

48.    In calculating Twic's Profits Available for Disgorgement, the first step is to determine the underlying sales which resulted from the alleged acts ("Unjust Sales").   Based on my analysis of Defendant's interrogatory answers, I understand that Twic has represented its gross revenues derived from products bearing the Infringement Marks is $██████ between March 2022 and November 2023.[40]

---

[40] Defendant's Third Supplemental Response to the First Set of Interrogatories, Interrogatory No. 14, Second Supplemental Response, p. 19 (Jason Fan Deposition Exhibit 3).  As of the date of my report, Defendants have not provided revenue data that allows me to provide any analysis of damages by year.

CONFIDENTIAL – ATTORNEY'S EYES ONLY
Page 29 of 66

## 2. Other Deductible Costs

49. The next step in determining Twic's Profits Available for Disgorgement is to determine any other costs incurred to make the Unjust Sales. I understand that the burden to prove these costs lie with Defendant.[41]

50. Based on my analysis of Defendant's interrogatory answers, I understand that Twic has represented its gross profit derived from products bearing the Infringement Marks is $█████ between March 2022 and November 2023.[42] Gross profit was derived by deducting cost of goods sold from gross revenue.

51. At this point, I am not aware of any other costs that would need to be deducted. If Twic identifies any other costs they feel should be deducted, I reserve the right to review those costs and update this report, if required.

52. The final step in determining the Profits Available for Disgorgement, is to apportion profits to factors other than the trademark, if any. I understand the burden for identifying apportionment, if appropriate, lies with the defendant. If Twic puts forth analysis that addresses apportionment, I reserve the right to review that analysis and update this report, if warranted.

---

[41] AICPA, Forensic & Valuation Services Practice Aid, Calculating Damages in Intellectual Property Disputes, Fourth Edition (Durham, North Carolina: AICPA, 2020), p. 103.

[42] Defendant's Third Supplemental Response to the First Set of Interrogatories, Interrogatory No. 14, Second Supplemental Response, p. 19 (Jason Fan Deposition Exhibit 3). As of the date of my report, Defendants have not provided revenue data that allows me to provide any analysis of damages by year.

CONFIDENTIAL - ATTORNEY'S EYES ONLY
Page 30 of 66

### 3. Calculation of Defendant Profits

53. Based on my analysis of the documents produced as of the date of my report and my experience in calculating Twic's Profits Available for Disgorgement, it is my opinion that should the Court determine that Twic is liable and that Forma.AI is entitled to damages, Twic's Profits Available for Disgorgement would be $████████.[43] See **Exhibit F**.

---

[43] Defendant's Third Supplemental Response to the First Set of Interrogatories, Interrogatory No. 14, Second Supplemental Response, p. 19 (Jason Fan Deposition Exhibit 3). As of the date of my report, Defendants have not provided revenue data that allows me to provide any analysis of damages by year.

CONFIDENTIAL — ATTORNEYS' EYES ONLY
Page 31 of 66

## VI.     PREJUDGMENT INTEREST

54.     I understand that Forma.AI may be entitled to recover prejudgment interest on a damages award.   In the event the Court requests a calculation of prejudgment interest, or other amounts, I reserve my right to provide additional calculations at a later date.

## VII. CONCLUSION

55. Should the Court determine that Defendant is liable and Forma.AI is entitled to damages, it is my opinion that the monetary relief should be measured as actual damages and/or disgorgement.

56. The following table summarizes the corresponding amounts.

| Damages | Amount |
|---|---|
| Reasonable Royalty | $ ███ |
| Profits Available for Disgorgement | ███ |

57. This report sets forth my opinions based on the information currently available to me and the assumptions set forth in this report, as of April 19, 2024. I reserve the right to supplement or amend this report based on additional information coming to my attention including additional discovery obtained, deposition testimony, or evidence presented at trial in this case.

Graham D. Rogers, ASA, MRICS CVS, CLP

Dated: April 19, 2024