IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
WESTERN DIVISION
Case No. 4:23-cv-00077-BO

| | | |
|---|---|---|
| FORMA AI INC., | ) | |
| | ) | **PLAINTIFF'S RESPONSE TO** |
| Plaintiff, | ) | **DEFENDANT'S EMERGENCY** |
| | ) | **MOTION FOR CLARIFICATION,** |
| v. | ) | **RECONSIDERATION, AND** |
| | ) | **EXPEDITED BRIEFING** |
| TWIC, INC., | ) | |
| | ) | |
| Defendant. | ) | |

## INTRODUCTION

Defendant filed its motion for *partial* summary judgment on August 9, 2024. (D.E. 29). Defendant's summary judgment papers failed to discuss Plaintiffs' state law claims in any substantive way and did not even cite to California or North Carolina state law. (*See* D.E. 30). But Defendant now seeks to convert its *partial* motion into *complete* summary judgment by having those previously unmentioned state law claims dismissed. Defendant styles this effort as a purported Rule 54(b) Motion for Clarification or Reconsideration. But courts routinely deny such improper and untimely attempts to have a second bite at the summary judgment apple. And the Court should do the same here.

On March 31, 2025, this Court issued its order on the parties' cross motions for summary judgment. (D.E. 56). The Court assessed likelihood of confusion under the Fourth Circuit's nine-factor test. (*Id.* at 4). It found that two of these nine factors favored Plaintiff. (*Id.* at 8-9). It found that other factors were either neutral or a close decision. (*Id.* at 5-11). And after weighing these factors, the Court ultimately concluded that no likelihood of confusion existed as a matter of law.

(*Id.* at 12). It therefore granted partial summary judgment in favor of Defendant as to Plaintiff's federal claims. (*Id.* at 15).

The Court's order did not address or resolve Plaintiff's state law claims because neither party raised an argument as to those claims nor asked for judgment on them. The Court later entered an order setting a trial date for the remaining claims (Plaintiff's state law claims), specifically noting that the summary judgment order did not "dispose of all pending claims." (D.E. 58).

On April 28, 2025, Defendant moved for clarification or reconsideration of the Court's summary judgment order as to whether the Court's finding that no likelihood of confusion exists as to the Lanham Act claims "also fully resolves the state law claims." (D.E. 60 at 2-3). Defendant now argues that likelihood of confusion is a necessary element of Plaintiff's state law claims and asks the Court, on reconsideration, to "enter final judgment on those claims in favor of Defendant." (*Id.* at 15).

Defendant's motion is meritless and should be denied on two grounds.

***First***, in the Fourth Circuit, a party cannot use a motion for reconsideration under Rule 54(b) to take a second bite at the summary judgment apple or to raise arguments that the movant simply failed to raise initially. That is precisely what has occurred here. If Defendant believed, as it now asserts, that the state law claims require likelihood of confusion as a necessary element, it should not have filed a ***partial*** motion for summary judgment and it should have made the arguments that it makes in its current motion in its summary judgment papers. Defendant did not do so. Therefore, it now seeks to correct its only recently perceived mistake here. But the law prohibits this type of attempt to use a motion for reconsideration as a do-over.

***Second***, even if Defendant had raised the validity of the state law claims in its summary judgment briefing, its motion fails because it cannot show "clear error causing manifest

injustice"—the relevant Rule 54(b) standard to warrant reconsideration here. *See U.S. Tobacco Cooperative v. United States*, 2019 WL 8323614, at *1 (E.D.N.C. Nov. 8, 2019). The Fourth Circuit has emphasized that "clear error" under Rule 54(b) is an incredibly high bar—a movant must establish that the decision was "dead wrong," not "just maybe or probably wrong; it must … strike [the court] as wrong with the force of a five-week-old, unrefrigerated dead fish." *TFWS, Inc. v. Franchot*, 572 F.3d 186, 194 (4th Cir. 2009).

Although wholly failing to address this relevant standard (*see* D.E. 60 at 3), Defendant necessarily contends that the Court committed this type of obvious, stinky-fish error in allowing Plaintiff's state law claims to proceed to trial. But the Court committed no error in doing so, much less blatant "dead wrong" error.

This is so because:

- The North Carolina Supreme Court—and other state courts in North Carolina—consistently analyze whether deception of the consuming public has occurred for purposes of state unfair competition claims *without* requiring a showing of likelihood of confusion and *without* undertaking the Fourth Circuit's nine-factor likelihood of confusion test for Lanham Act claims. Consistent with this approach, the Fourth Circuit has analyzed state-law unfair competition claims based on infringing conduct in the same fashion.

- California courts have emphasized that conduct outside the reach of the Lanham Act can be actionable under its UCL.

- Even if likelihood of confusion were a necessary element of Plaintiff's state law claims, the Court would ***not*** have committed clear error in allowing those claims to

go forward because it could have found that there is a genuine issue of material fact as to likelihood of confusion under the nine-factor test used for Lanham Act claims.

Accordingly, Defendant's motion for reconsideration or clarification is meritless and should be denied.

## STANDARD OF REVIEW

Rule 54(b) provides that an interlocutory order "may be revised at any time before the entry of a judgment adjudicating all the claims and all the parties' rights and liabilities." Fed. R. Civ. P. 54(b). But a district court's discretion under Rule 54(b) is "not limitless." *Carlson v. Boston Sci. Corp.*, 856 F.3d 320, 325 (4th Cir. 2017). Rather, the Fourth Circuit has "cabined revision pursuant to Rule 54(b) by treating interlocutory rulings as law of the case." *Id.* Thus, a court may revise an interlocutory order under Rule 54(b) "under the same circumstances in which [the court] may depart from the law of the case: (1) a subsequent trial producing substantially different evidence; (2) a change in applicable law; or (3) clear error causing manifest injustice." *U.S. Tobacco Cooperative*, 2019 WL 8323614, at *1 (quotation omitted).

As Defendant has acknowledged, a court should use the "same standards" to resolve a motion for clarification of an interlocutory order as for a motion for reconsideration. (D.E. 60 at 3). Thus, the Fourth Circuit's three-prong test applies to both Defendant's motion for reconsideration and for clarification.

## ARGUMENT

**I.     Defendant's motion for reconsideration or clarification as to the validity or scope of Plaintiff's state law claims should be denied because Defendant failed to raise this issue at summary judgment and cannot do so now.**

A motion for reconsideration under Rule 54(b) is "disfavored and should be granted sparingly." *I.P. by Newsome v. Pierce*, 2020 WL 3405209, at *1 (E.D.N.C. June 19, 2020). Such

4

a motion cannot be used as "a second bite at the apple." *Thomas v. North Carolina Mut. Life Ins. Co.*, 2023 WL 8000301, at *1 (E.D.N.C. Oct. 12, 2023), *aff'd*, 2024 WL 1366772 (4th Cir. Apr. 1, 2024) (citation omitted). Nor can a motion for reconsideration be used as an "opportunity for a litigant to raise issues it could have raised in the first instance prior to entry of judgment." *Id.* (citation omitted); *see also United States v. Lovely*, 420 F. Supp. 3d 398, 403 (M.D.N.C. 2019) (Rule 54(b) motions should not be used to "raise new arguments or evidence that could have been raised previously"). Thus, a party who "fails to present his strongest case in the first instance generally has no right to raise new theories or arguments in a motion to reconsider." *United States v. Duke Energy Corp.*, 218 F.R.D. 468, 474 (M.D.N.C. 2003), *aff'd*, 2009 WL 10717776 (M.D.N.C. Jan. 30, 2009) (cleaned up) (quoting *Fidelity State Bank, Garden City, Kan. v. Oles*, 130 B.R. 578, 581 (D. Kan. 1991)).

A party cannot circumvent this rule by pointing to a brief mention of its new argument in its previous briefing; rather, the party must have fully presented to the court the issue on which it seeks reconsideration. *See U.S. Tobacco Cooperative*, 2019 WL 8323614, at *2 (holding that the defendant had not sufficiently raised an argument for the court's consideration by mentioning it in one sentence of its reply brief and that the court therefore would not consider the argument made "for the first time on a motion for reconsideration"); *Best v. Butterball, LLC*, 2024 WL 386921, at *1 (E.D.N.C. Jan. 31, 2024) (holding that the argument the plaintiff raised in his motion for reconsideration was insufficiently presented in his previous briefing because the plaintiff made it "in passing in a single sentence of his original brief").

Like a motion for reconsideration, a motion for clarification cannot be based on an issue that was not "raised in any way during the earlier pleadings or arguments on the summary judgment motion." *Commercial Union Ins. Co. v. Charleston Marine Leasing Co.*, 52 F.3d 320, 1995 WL

224046, at *6 (4th Cir. Apr. 17, 1995) (denying the defendant's motion to clarify whether the court's ruling that the plaintiff was not required to indemnify it was based on distinctions between sources of liability where the defendant did not raise those distinctions prior to the court's summary judgment decision)[1]; *see also Parkins by and through Turner v. South Carolina*, 2022 WL 610398, at *1,3 (D.S.C. Mar. 1, 2022), *aff'd*, 2024 WL 4490632 (4th Cir. Oct. 15, 2024) (denying the defendants' motion requesting an order "clarifying or correcting an apparent oversight" in the court's order on the defendants' motion to dismiss where the defendants did not raise in their motion to dismiss the arguments they sought to "clarify" or "correct").

Here, Defendant seeks reconsideration as "to the question of whether the Court's finding of no likelihood of confusion also fully resolves the state law claims." (D.E. 60 at 3). Likewise, it asks for clarification as to whether "Plaintiff's state unfair competition claims may be premised on trademark infringement or if the Court's ruling that there is no likelihood of confusion resolved any trademark infringement portion of [Plaintiff's state law] claims." (*Id.* at 2-3). But Defendant did *not* raise these issues in its previous summary judgment briefing and therefore cannot seek "clarification" or "reconsideration" of them now.

Defendant did not argue in its summary judgment briefs that Plaintiffs' state law claims cannot survive in the absence of a likelihood of confusion, as it now does. (D.E. 31, 52). Nor did Defendant cite *any* California or North Carolina state law in its summary judgment briefs. (D.E.

---

[1] The plaintiff in *Commercial Union* brought its motion for clarification and reconsideration under Rule 59(e), which applies to final judgments. Rule 59(e) motions are resolved under basically the same standard as Rule 54(b) motions—a court should alter or amend a previous judgment only: "(1) to accommodate a controlling or significant change in the law since the court's ruling; (2) to account for new evidence which has become available since trial; or (3) to prevent grave injustice or to correct a clear error." *Commercial Union*, 1995 WL 224046, at *5; *see* Section II. The only difference between the two standards is that Rule 54(b) accounts for "potentially different evidence discovered during litigation as opposed to the discovery of new evidence not available at trial." *Carlson*, 856 F.3d at 325 (internal quotation omitted).

31, 52). Indeed, Defendant's opening summary judgment brief references Plaintiff's California UCL claim and its North Carolina common law unfair competition claim only once—in merely listing Plaintiff's claims in its Statement of the Case. (D.E. 31 at 1). Defendant's reply brief did not mention these claims at all. (D.E. 52). Likewise, Plaintiff understood that Defendant's summary judgment motion was limited to Plaintiff's federal Lanham Act claims and responded in kind, never mentioning its California and North Carolina state law claims in its responsive brief. (D.E. 47).

Defendant *now* claims it asked for summary judgment on all of Plaintiff's claims (D.E. 60 at 12) because, in its conclusion in its opening brief, it stated that "[a]s likelihood of confusion is a required element in each of Plaintiff's claims, this court should enter summary judgment in favor of Defendant" (D.E. 31 at 27). This one statement cannot reasonably be construed as seeking summary judgment on Plaintiff's state law claims where Defendant's briefs *never* discuss those claims and where Defendant did not repeat this request in its reply brief.[2] But even if the statement unambiguously included Plaintiff's state law claims, this briefest-of-brief mentions is insufficient to raise the issue for the Court's consideration. *See U.S. Tobacco Cooperative*, 2019 WL 8323614, at \*2; *Best*, 2024 WL 386921, at \*1. Defendant cannot seek reconsideration or clarification of an issue that it never adequately raised to the Court.

Nor can Defendant argue that reconsideration is necessary because it was unable to raise its new argument as to the state law claims prior to the Court's summary judgment order. *See Thomas*, 2023 WL 8000301, at \*1. Defendant contends that likelihood of confusion is an essential element of Plaintiff's state law claims because those claims are based solely on the theory of trademark infringement. (D.E. 60 at 7). For support, Defendant's motion relies on three sources: (1) the allegations in Plaintiff's Amended Complaint (D.E. 60 at 7-9); (2) Plaintiff's Rule 26(a) initial

---

[2] Defendant concludes its reply brief by simply stating that the Court "should grant Defendant's motion for summary judgment on likelihood of confusion." (D.E. 52 at 10).

disclosures (*id.* at 10-11); and (3) Plaintiff's interrogatory responses (*id.* at 11). Defendant had ready access to all of these sources prior to the parties' cross-motions for summary judgment. Defendant presents no evidence that was not available to it when it moved for summary judgment.

Accordingly, this Court should deny Defendant's motion for reconsideration or clarification. Defendant had every opportunity to ask the Court to dismiss Plaintiff's state law claims as lacking the element of likelihood of confusion but failed to do so. Defendant's ambiguous reference to "each" of Plaintiff's claims in its perfunctory conclusion to its opening brief did not sufficiently raise the issue. Nor does Defendant depend for support on any sources that it couldn't have raised in its summary judgment motion. Thus, because Defendant simply "fail[ed] to present [its] strongest case in the first instance," it has no right to raise new arguments or theories in a motion to reconsider or clarify. *See Duke Energy Corp.*, 218 F.R.D. at 474.

## II. Defendant's motion should be denied because it cannot meet the Rule 54(b) standard for reconsideration or clarification.

Even if Defendant were able to raise its new arguments under the guise of a motion for reconsideration, Defendant cannot meet the standard for such a motion under Rule 54(b) because it cannot show that the Court's summary judgment order contained "clear error causing manifest injustice."

As set forth above, Rule 54(b) permits a court to revise an interlocutory order only under three circumstances: "(1) a subsequent trial producing substantially different evidence; (2) a change in applicable law; or (3) clear error causing manifest injustice." *U.S. Tobacco Cooperative*, 2019 WL 8323614, at *1 (quotation omitted). Here, Defendant has not pointed to any new evidence under this first prong. (*See* D.E. 60; *see supra* 7-8). Nor does it contend that there has been a change in applicable law under the second prong. Accordingly, Defendant's motion must fail

unless Defendant can satisfy the third prong—that the Court's summary judgment order contains clear error causing manifest injustice.

The Fourth Circuit has set a rigorous standard to show "clear error" under the third prong of this test: a movant must establish that the decision was "dead wrong," not "just maybe or probably wrong; it must … strike [the court] as wrong with the force of a five-week-old, unrefrigerated dead fish." *TFWS, Inc. v. Franchot*, 572 F.3d 186, 194 (4th Cir. 2009) (quotation omitted); *see also Siguel v. King Farm Citizens Assembly, Inc.*, 2024 WL 3302672, at *13 (D. Md. July 3, 2024) (quotation omitted) (assuming that the plaintiff seeking reconsideration had met the "high bar of establishing error," he still failed to establish that the court was "dead wrong in a way that stinks like a five-week-old, unrefrigerated dead fish").[3]

A party's request for the court simply "to rethink what the Court has already thought through—rightly or wrongly" does not satisfy the Rule 54(b) "clear error" standard. *U.S. Tobacco Cooperative*, 2019 WL 8323614, at *2. Nor is it sufficient under this standard "for a party to show that legal precedent could support an alternative resolution." *Bethany Boardwalk Group LLC v. Everest Sec. Ins. Co.*, 2022 WL 12324609, at *6 (4th Cir. Oct. 21, 2022).

Defendant contends that the Court committed error in determining that likelihood of confusion is *not* a necessary element of North Carolina common law unfair competition claims and California UCL claims that sound in trademark infringement. (D.E. 60 at 4-6). Thus, Defendant argues, the Court should have dismissed the state law claims after it found no likelihood of confusion with respect to the Lanham Act claims. But the Court's decision to allow Plaintiff's North Carolina and California state law claims to proceed to trial was not error, much less clear error causing manifest injustice.

---

[3] Notably, Defendant's memorandum of law fails to recite this controlling standard for a Rule 54(b) motion. (D.E. 60 at 3).

**A.    The Court did not commit clear error in permitting Plaintiff's North Carolina common law unfair competition claim to proceed to trial.**

In cases involving consumer deception, as here, North Carolina state courts have recognized that North Carolina's unfair competition claims are broader in scope than and not synonymous with federal Lanham Act claims. The Supreme Court of North Carolina has emphasized that North Carolina's UDTPA was enacted "to *supplement* federal legislation," and the Court has stressed the "generality of the standards of illegality" covered by the UDTPA.[4] *Marshall v. Miller*, 302 N.C. 539, 548-49, 276 S.E.2d 397, 403 (1981) (emphasis added). Therefore, North Carolina courts define the terms "unfair" and "deceptive" broadly.

For example, as noted in the case the Court cited in its summary judgment order, *Harty v. Underhill*, 211 N.C. App. 546, 552, 710 S.E.2d 327, 332 (2011), an act or practice is unfair if it is "immoral, unethical, oppressive, unscrupulous, or substantially injurious to consumers." An act or practice is deceptive "if it has the capacity or tendency to deceive." *Id.* Likewise, North Carolina courts define unfair competition expansively to "appl[y] to misappropriation as well as misrepresentation; to the selling of another's goods as one's own, to misappropriation of what equitably belongs to a competitor; to acts which lie outside the ordinary course of business and are tainted by fraud, coercion, or conduct otherwise prohibited by law." *Harrington Mfg. Co. v. Powell Mfg. Co.*, 38 N.C. App. 393, 404, 248 S.E.2d 739, 746 (1978) (quotation omitted).

---

[4] North Carolina courts have acknowledged that common law unfair competition claims may be analyzed the "same way" as a UDTPA claim. *See Glob. Textile All., Inc. v. TDI Worldwide, LLC*, 2018 NCBC 121, at ¶ 51, 2018 WL 6272929, at *10 (N.C. Super. Ct. Nov. 29, 2018); *see also Blue Rhino Glob. Sourcing, Inc. v. Well Traveled Imps., Inc.*, 888 F. Supp. 2d 718, 721 n.1 (M.D.N.C. 2012) (stating that the standard a plaintiff must meet to recover on a common law unfair competition claim "is not appreciably different" from a UDTPA claim).

North Carolina courts do not apply a strict multi-factor test to determine whether a trade practice is unfair or deceptive under state law. Rather, this determination "usually depends upon the facts of each case and the impact the practice has in the marketplace." *Marshall*, 302 N.C. at 548, 276 S.E.2d at 403. As the North Carolina Court of Appeals has noted, "courts have the capacity and authority to recognize an unfair or deceptive trade practice when they see one." *Pinehurst, Inc. v. O'Leary Bros. Realty, Inc.*, 79 N.C. App. 51, 59, 338 S.E.2d 918, 923 (1986). Nor does a plaintiff have to prove "fraud, bad faith or intentional deception to sustain [an] unfair and deceptive practice claim." *Torrance v. AS & L Motors, Ltd.*, 119 N.C. App. 552, 555, 459 S.E.2d 67, 70 (1995). The plaintiff "must only show that defendant's statements had the capacity or tendency to deceive and that plaintiff suffered injury as a proximate result." *Id.*

In keeping with this expansive view of unfair competition under North Carolina law, courts applying North Carolina state law have not always required likelihood of confusion as a necessary element of unfair competition or UDTPA claims. For example, in *Belk, Inc. v. Meyer Corp., U.S.*, 679 F.3d 146, 151 (4th Cir. 2012), the plaintiff brought claims for patent infringement, trade dress infringement, and violation of the UDTPA based on the defendant's selling of a cookware line that was similar to the plaintiff's cookware. At trial, the jury found that the defendant infringed the plaintiff's trade dress and, with respect to the state claim, that the defendant's cookware was "deceptively similar" to the plaintiff's. *Id.* The district court determined that, based on the jury's findings, the defendant engaged in unfair and deceptive trade practices as

a matter of law.[5] On appeal, the defendant contended that the district court erred in tendering unfair competition issues to the jury that were not unfair and deceptive trade practices.

The Fourth Circuit rejected this argument. Relying on the *Harty* definitions of unfair and deceptive, the court held that the defendant engaged in unfair and deceptive trade practices as a matter of law. *Id.* at 164. As the court determined, the conduct found by the jury (that the defendant sold cookware that was "deceptively similar" to the plaintiff's) "falls within the category of conduct that North Carolina courts have held possesses the tendency or capacity to mislead or creates the likelihood of deception." *Id.* at 166. For that proposition, the Fourth Circuit cited to *Harrington Mfg. Co. v. Powell Mfg. Co.*, 38 N.C. App. 393, 248 S.E.2d 739 (1978). *Id.* In *Harrington*, the North Carolina Court of Appeals held that allegations that a party had passed off its goods as those of a competitor involved the "misappropriation of benefits which flow from the quality of a competitor's product" and sufficiently alleged an unfair competition claim. *Id.* (quoting *Harrington*, 38 N.C. App. at 405, 248 S.E.2d at 746).

Significantly, neither the *Belk* nor the *Harrington* courts required the plaintiff to plead or prove likelihood of confusion to prevail. *See Harrington*, 38 N.C. App. at 404-05, 248 S.E.2d at 746. Nor did either court undergo (or even mention) the federal multi-factor test to determine likelihood of confusion. Rather, both courts determined that the infringing conduct at issue constituted unfair competition under North Carolina law in the absence of a likelihood of confusion analysis.

Similarly, other North Carolina decisions involving misrepresentations to consumers have not defined deception in terms of likelihood of confusion nor required the party to undergo a nine-

---

[5] Under the UDTPA, it is "the jury's province" to determine the facts of a case and, based on those findings, the court then determines whether the conduct is unfair or deceptive. *Bolton Corp. v. T.A. Loving Co.*, 94 N.C. App. 392, 411, 380 S.E.2d 796, 808 (1989).

factor analysis[6] to establish an unfair competition claim. *See Pinehurst, Inc.*, 79 N.C. App. at 59, 338 S.E.2d at 923 (holding that the defendant realty firm's conduct in misrepresenting rescission grounds to housing development landowners constituted unfair competition and an unfair or deceptive trade practice in that the defendants' statements had the "capacity to deceive"); *Marshall*, 302 N.C. at 548, 276 S.E.2d at 403 (holding that, in case involving a mobile home park owner's misrepresentations to the park's residents, a practice is deceptive under the UDTPA if it "has the capacity or tendency to deceive; proof of actual deception is not required").

Defendant cites several North Carolina federal cases for the proposition that "[w]hen a common law claim of unfair competition sounds in trademark infringement, … it is analyzed under the Lanham Act standard." (D.E. 60 at 4-7). But these cases, while finding that a state law unfair competition or UDTPA claim succeeded when the Lanham Act claim also succeeded, did not specifically state that likelihood of confusion was a *necessary* element of the state law claim nor did they define unfair or deceptive in terms of likelihood of confusion. *See Passport Health, LLC v. Avance Health Sys., Inc.*, 823 F. App'x 141, 153 (4th Cir. 2020) (granting summary judgment to the defendant on the plaintiff's claims of trademark infringement and state unfair and deceptive trade practices and unfair competition; stating only that the state claims required a "tendency to deceive" or conduct that would "likely mislead prospective purchasers"); *Georgia Pacific Consumer Prods., LP v. Von Drehle Corp.*, 618 F.3d 441, 449-55 (4th Cir. 2010) (reversing grant of summary judgment for the defendant on the plaintiff's Lanham Act claims and North Carolina unfair competition claim; citing to Fourth Circuit cases analyzing *Virginia*

---

[6] In *Grayson O Co. v. Agadir Int'l LLC*, 856 F.3d 307, 314 (4th Cir. 2017), the Fourth Circuit set out a nine-factor test to establish likelihood of confusion for trademark infringement under the Lanham Act. This Court relied on these factors in assessing likelihood of confusion for Plaintiff's federal claims. (D.E. 56 at 4).

common law of unfair competition and stating only that North Carolina's law of unfair competition "is not dissimilar" to federal trademark infringement law);[7] *Polo Fashions, Inc. v. Craftex, Inc.*, 816 F.2d 145, 148 (4th Cir. 1987) (affirming entry of summary judgment for the plaintiff as to liability on both Lanham Act claims and North Carolina common law unfair competition and UDTPA claims, but stating only that the UDTPA claim "encompass[es] any conduct that a court of equity would consider unfair" and that a practice is deceptive "if it has a tendency to deceive").

In contrast, the cases cited by Plaintiff, above, did not require likelihood of confusion as a necessary element of the state law unfair competition claims nor did the courts analyze the claims under the federal trademark infringement standard. *See Belk, Inc.*, 679 F.3d at 151; *Harrington Mfg. Co.*, 38 N.C. App. at 405, 248 S.E.2d 746; *Pinehurst, Inc.*, 79 N.C. App. at 59, 338 S.E.2d at 923; *Marshall*, 302 N.C. at 548, 276 S.E.2d at 403. At most, therefore, Defendant has shown, not that likelihood of confusion is a necessary element of all state law unfair competition or UDTPA claims arising from infringing conduct, but that North Carolina courts have analyzed this issue in different ways. Some have applied federal law, while others adhere to state law concepts of unfair or deceptive. The Court's decision to follow one line of cases over the other cannot be five-day-old dead fish wrong.[8] And the third prong of the Rule 54(b) standard—clear error causing

---

[7] The *Georgia Pacific* court also cites to *Charcoal Steak House of Charlotte, Inc. v. Staley*, 263 N.C. 199, 204, 139 S.E.2d 185, 189 (1964) (quotation omitted), in which the North Carolina Supreme Court held that the "test (of unlawful competition) is simple, and lies in the answer to the question: Has the plaintiff's legitimate business been damaged through acts of the defendants which a court of equity would consider unfair?"

[8] When a federal court is faced with an unsettled state law issue, it should "determine the rule that the North Carolina Supreme Court would probably follow, not fashion a rule which [it], as an independent federal court, might consider best." *Lowe's North Wilkesboro Hardware, Inc. v. Fidelity Mut. Life Ins. Co.*, 319 F.2d 469, 472 (4th Cir. 1963). The fact that the North Carolina Supreme Court in *Marshall* did not define deception in terms of a federal likelihood of confusion analysis indicates that it would not require likelihood of confusion as an essential element of a common law unfair competition claim.

manifest injustice—demands a dead wrong certainty. *See TFWS, Inc.*, 572 F.3d at 194. Accordingly, Defendant has not shown and cannot show that this Court committed clear error causing manifest injustice in ordering Plaintiff's North Carolina common law unfair competition claim to proceed to trial.

**B.**     **The Court did not commit clear error in permitting Plaintiff's California statutory unfair competition claim to proceed to trial.**

Like North Carolina's UDTPA, the California Unfair Competition Law ("UCL") is "broad" and "sweeping." *Beverage v. Apple, Inc.*, 101 Cal. App. 5th 736, 747, 320 Cal. Rptr. 3d 427, 435 (2024) (citation omitted). The UCL prohibits, among other things, "any unlawful, unfair or fraudulent business act or practice." Cal. Bus. & Prof. Code § 17200. Because this provision is "written in the disjunctive, it establishes three varieties of unfair competition—acts or practices which are unlawful, or unfair, or fraudulent." *Cel-Tech Commc'ns, Inc. v. Los Angeles Cellular Tel. Co.*, 20 Cal.4th 163, 180, 973 P.2d 527, 540 (1999). Each of the three adjectives (unlawful, unfair, or fraudulent) "captures a separate and distinct theory of liability." *Beverage*, 101 Cal. App. 5th at 747, 320 Cal. Rptr. 3d at 435.

California courts have adopted the following test for the "unfair" prong of the UCL: "When a plaintiff who claims to have suffered injury from a direct competitor's 'unfair' act or practice invokes section 17200, the word 'unfair' in that section means conduct that threatens an incipient violation of an antitrust law, or violates the policy or spirit of one of those laws because its effects are comparable to or the same as a violation of the law, or otherwise significantly threatens or harms competition." *Cel-Tech Communications, Inc.*, 20 Cal. 4th at 186-87, 973 P.2d at 544. Under this prong, a practice "may be deemed unfair even if not specifically proscribed by some other law." *Cel-Tech*, 20 Cal. 4th at 180, 973 P.2d at 540. In creating this distinction, the California legislature recognized that "unfair or fraudulent business practices may run the gamut of human

ingenuity and chicanery and sought to account for the creative nature of the scheming mind."

*Beverage*, 101 Cal. App. 5th at 747, 320 Cal. Rptr. 3d at 435 (citation omitted).

Indeed, in the case Defendant itself cites, *AK Futures LLC v. TBH Supply LLC*, 2023 WL

8351565, at *5 (C.D. Cal. Nov. 3, 2023), the court emphasized the broad reach of the unfair prong.

As the *AK* court determined, "[n]otably, it is not just conduct that threatens a violation of an actual

antitrust law that supports a UCL unfairness claim. Equally actionable is conduct that 'violates the

policy or spirit of one of those laws because its effects are comparable to or the same as a violation

of the law, or otherwise significantly threatens or harms competition.'" *Id.; see also Sporting*

*Supplies Int'l, Inc. v. Tulammo USA, Inc.*, 2011 WL 13135282, at *3 (C.D. Cal. Jan. 3, 2011)

(holding that the plaintiff complaining of infringing conduct by the defendant had sufficiently

alleged that the defendants' acts "otherwise significantly threaten [ ] or harm [ ] competition" under

the UCL definition of "unfair" and citing to courts holding that "the 'unfair' prong of § 17200

embraces conduct outside violations of anti-trust laws").

Thus, as with North Carolina's unfair competition claim, California's statutory unfair

competition claim (especially the unfair prong of that claim) permits conduct outside the reach of

the Lanham Act to be actionable. Accordingly, the Court was not "dead wrong" in permitting

Plaintiff's UCL claim to proceed to trial.

### C. Even if likelihood of confusion is a necessary element of Plaintiff's state law claims, reconsideration is not warranted in that the Court would not have committed clear error in finding a likelihood of confusion.

Assume for purposes of this argument only that: (1) likelihood of confusion *is* a necessary

element of Plaintiff's state law claims; *and* (2) Defendant argued on summary judgment that the

state law claims should be dismissed on that basis. This is the scenario most favorable to

Defendant's position. Under these circumstances, Defendant could argue that the Court erred in

not dismissing the state law claims because it determined that there was no likelihood of confusion as a matter of law. But even if this perfect scenario for Defendant actually existed here (which it does not), Defendant still cannot show the *clear error* required for the Court to reconsider or clarify its decision under Rule 54(b). The Court's factual analysis of the nine-factor likelihood of confusion test yielded a mixed and arguably close result, with factors favoring each of the parties. Thus, the Court would not have committed clear error no matter how it ultimately balanced these factors or what resulting decision it made as to the state law claims based on its balancing assessment.

In its summary judgment opinion, this Court emphasized that the likelihood of consumer confusion is an "'inherently factual' issue that depends on the unique facts and circumstances of each case." (D.E. 56 at 4) (quoting *Anheuser-Busch, Inc. v. L&L Wings, Inc.*, 962 F.2d 316, 318 (4th Cir. 1992)). The Court also cited to *Grayson O Co.* (D.E. 56 at 4), in which the Fourth Circuit noted that not all of the factors in its nine-factor likelihood of confusion test "will be relevant in every trademark dispute, and there is no need for each factor to support [the plaintiff's] position on the likelihood of confusion issue." 856 F.3d at 314 (quotation omitted); *see also Pizzeria Uno Corp. v. Temple*, 747 F.2d 1522, 1527 (4th Cir. 1984) (cautioning that not all of the nine factors are "always relevant or equally emphasized in each case") (quotation omitted). In these types of situations where a court is balancing factors of differing weight or relevance, a party does not meet its rigorous burden of showing clear error for reconsideration by asserting that the court should have weighed some of the factors differently. *See Block Drug Co., Inc. v. Sedona Labs., Inc.*, 2006 WL 3694622, at *2 (D. Del. Dec. 14, 2006) (holding that the defendant did not meet its "high burden" of showing clear error on its motion to reconsider by arguing that the court incorrectly weighed some of the 12 factors in the test for transferring venue, even if that were true).

Here, the Court engaged in a factual assessment of each of the nine likelihood of confusion factors set out in *Grayson O Co.*, 856 F.3d at 314. (D.E. 56 at 4). While the Court ultimately concluded that a genuine issue of material fact did not exist as to likelihood of confusion, it found that a number of the nine factors favored Plaintiff.

For example, the Court accepted Defendant's concession that the factor of "similarity of goods or services offered" favored Plaintiff and determined that the factor weighed in favor of a likelihood of confusion. (D.E. 56 at 8). The Court also found that the "similarity of advertising" factor weighed in favor of a likelihood of confusion in that both parties use LinkedIn and both parties' names appear when searching "forma" on the internet. (*Id.* at 9). The Court also determined that two factors were neutral for likelihood of confusion—"similarity of facilities used" (finding that the parties use similar channels of trade, even though they do not "receive the bulk of their business from the same sources") (*id.* at 8) and "quality of Defendant's product" (finding that neither party contended that the other's product was inferior) (*id.* at 11).

And the Court's opinion indicated that other factors were, arguably, a close question. For example, with respect to "actual confusion," the Court noted that Plaintiff had provided evidence of 29 separate instances of confusion. It acknowledged that this evidence "may at first appear damning" as to proving confusion. (*Id.* at 10). It also acknowledged that the parties "dispute[d]" the number of emails Defendant received over the contested period, as relevant to whether Plaintiff's evidence of confusion exceeded *de minimis* levels. (*Id.* at 11). Based on this initial impression and factual dispute over a material issue as to actual confusion, one could argue that this factor was a close call.

The "strength of the mark" factor similarly can be viewed as one that was not easily decided. The Court recognized that federal courts "give great weight" to the determination of the

United States Patent & Trademark Office ("USPTO"). (D.E. 56 at 5). It also acknowledged that, because the USPTO granted registration to Plaintiff's mark without requiring proof of secondary meaning, Plaintiff was entitled to a presumption that "its mark is, at least, suggestive." (*Id.*). Despite this presumption, the Court found that the mark lacked conceptual strength based, in part, on the purportedly wide use of the mark's component parts. In analyzing the component parts, however, the Court admitted that the "anti-dissection rule" (requiring consideration of the mark as a whole rather than its component parts) was the proper standard. (*Id.* at 5).

Thus, the Court's likelihood of confusion analysis was not an obvious 9-0 victory for Defendant. Rather, two of the nine factors favored Plaintiff, two were neutral, and two others were arguably close decisions. As in *Block Drug*, 2006 WL 3694622, at *2, a court does not commit clear error warranting reconsideration even if it improperly weighs some factors in a multi-factor test. Accordingly, even if likelihood of confusion were a necessary element of Plaintiff's state law claims and even if Defendant had asked the Court to dismiss those claims for lack of likelihood of confusion, Defendant would not be entitled to reconsideration because the Court did not commit clear error in its weighing of the nine factors or its consequent decision to allow the state law claims to proceed to trial.

## CONCLUSION

For these reasons, Plaintiff requests that the Court deny Defendant's motion to reconsider or clarify the Court's summary judgment order.

Respectfully submitted this the 19th day of May, 2025.

/s/ Joseph A. Schouten
Joseph A. Schouten
N.C. State Bar I.D. No.:  39430
email: jas@wardandsmith.com
Erica B. E. Rogers
N.C. State Bar I.D. No.:  50963
email:  ebrogers@wardandsmith.com
For the firm of
Ward and Smith, P.A.
Post Office Box 33009
Raleigh, NC  27636-3009
Telephone:  919.277.9100
Facsimile:  919.277.9177
*Attorneys for Plaintiff*

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that he has this day served a copy of the foregoing PLAINTIFF'S RESPONSE TO DEFENDANT'S EMERGENCY MOTION FOR CLARIFICATION, RECONSIDERATION AND EXPEDITED BRIEFING to all counsel of record via electronic mail.

DATED: May 19, 2025.

<div style="margin-left:40%">

*/s/ Joseph A. Schouten*
Joseph A. Schouten
N.C. State Bar I.D. No.: 39430
email: jas@wardandsmith.com
Erica B. E. Rogers
N.C. State Bar I.D. No.: 50963
email: ebrogers@wardandsmith.com
For the firm of
Ward and Smith, P.A.
Post Office Box 33009
Raleigh, NC 27636-3009
Telephone: 919.277.9100
Facsimile: 919.277.9177
*Attorneys for Plaintiff*

</div>